UNITED STATES, Appellee

v.

DAVID H. SONNENSCHEIN, First Lieutenant, United States Air Force, Appellant

1 USCMA 64, 1 CMR 64

**No. 8**

Decided November 27, 1951

MAJ. Harry T. Dybman, USAF, for Appellant.
LT. COL. Jean F. Rydstrom, USAF, for Appellee.

### Opinion of the Court

PAUL W. BROSMAN, Judge:

This case is before us on petition for review granted September 20, 1951, pursuant to the provisions of the Uniform Code of Military Justice, Article 67(b) (3) (Act of 5 May 1950, 64 Stat. 108, 50 U.S.C. §§ 551–736). The allowance of review was only partial, however, and the order expressly limited arguments to the question of jurisdiction of the United States Court of Military Appeals. The accused was charged with the larceny of public funds, in violation of Article of War 93; with the same larceny, in violation of Article of War 95; and with the utterance of three checks against insufficient funds with intent to defraud, in violation of the same Article. He was tried by general court-martial on March 29, 1951, at Randolph Air Force Base, Texas, and entered pleas of not guilty to all charges and specifications. He was found guilty under all charges and specifications and sentenced to dismissal. Although the findings of guilty of certain Specifications of Charge II were disapproved by the appointing authority, on recommendation of his Staff Judge Advocate, the remaining

findings and the sentence were approved by him on May 1, 1951. The case was considered by a board of review in the Office of The Judge Advocate General, United States Air Force, which on May 29, 1951, found that the court trying the accused had jurisdiction and was legally constituted, that no errors affecting his substantial rights were committed during the trial, and that the record was legally sufficient to support the findings and sentence. Thereafter, on the same day, May 29, 1951, the Judicial Council, United States Air Force, began its consideration of the case, pursuant to the provisions of Article of War 48, and on July 6, 1951, announced its confirmation of the sentence, subject to the concurrence of The Judge Advocate General. On July 10 following, The Judge Advocate General addressed a memorandum to the Secretary of the Air Force seeking an expression of his views concerning intervention in the case. Six days later the Secretary indicated his desire not to intervene, and on the same day, July 16, 1951, The Judge Advocate General concurred in the action of the Judicial Council. On the same date, too, there issued General Court-Martial Orders No. 23, Department of the Air Force, directing execution of the sentence. The accused sought review in this Court by informal letter dated August 7, 1951, which we treated as a petition, and which was followed by the grant reported in the opening sentence of this opinion.

The only question before us in the present case is whether the Court has jurisdiction to entertain the accused's petition for review of his record of trial. Its determination depends on the intention expressed in apposite portions of the language of the Act of 5 May 1950; Executive Order 10214, February 8, 1951; the Manual for Courts-Martial, 1949; the Manual for Courts-Martial, United States, 1951; and the Articles of War (§ 1, Chap. II, Act of 4 June 1920; 41 Stat. 787, as amended by acts of 20 August 1937, 50 Stat. 724; 14 December 1942, 56 Stat. 1050; 15 December 1942, 56 Stat. 1051; and 24 June 1948, P. L. 759, 80th Cong.).

In our opinion in the case of United States v. Lucas (No. 7), 1 USCMA 19, 1 CMR 19, the following language was used by Latimer, J., the organ of the Court:

"For the purposes of this case we can and do hold that the act of Congress (the Code) and the act of the Executive (the Manual) are on the same level and that the ordinary rules of statutory construction apply. In that event the general rule is that statutes dealing with the same subject should, if possible, be so construed that effect is given to every provision of each. Moreover, in dealing with each, its provisions should be construed so that no part will be inoperative, superfluous, void or ineffective."

Adopting this view, as we do for application to the present case, it follows that all of the items mentioned above will be regarded as sharing a similar authoritative position. With this understanding, we approach our consideration of the problem through reference to the Uniform Code of Military Justice, Article 67 (b) and (c), the language of which is set out below, and which is repeated in substance and with elaboration in paragraph 101, Manual for Courts-Martial, United States, 1951:

"(b) The Court of Military Appeals shall review the record in the following cases:

"(1) . . .

"(2) . . .

"(3) All cases reviewed by a board of review in which, upon petition of the accused and on good cause shown, the Court of Military Appeals has granted a review.

"(c) The accused shall have thirty days from the time he is notified of the decision of a board of review to petition the Court of Military Appeals for a grant of review. . . ."

These provisions on their face and standing alone would seem to suggest the presence of jurisdiction to review

**67**

the instant record. The accused's case certainly received the attention of a board of review, as required by Article 67(b) (3), and his petition was timely and fully met the provisions of Section (c) of the same Article. Indeed, this view is borne out by reference to all four corners of the Act of 5 May 1950, the overriding intendment of which is to confer on this Court complete appellate judicial authority in the sphere of military justice in all services, except as specific areas are clearly removed from its jurisdiction by the Act's own terms or those of other authoritative directives. It is, therefore, necessary to inquire whether limitations exist which are applicable to the present petition. At this point attention is directed immediately to Section 4 of the Act, which provides as follows:

"All offenses committed and all penalties, forfeitures, fines, or liabilities incurred prior to the effective date of this Act under any law embraced in or modified, changed, or repealed by this Act *may be prosecuted, punished, and enforced, and action thereon may be completed, in the same manner and with the same effect as if this Act had not been passed.*" (italics supplied)

Here we find—at first blush, at least—a marker pointing in an opposite direction, for the quoted words suggest that cases involving offenses committed prior to May 31, 1951, the effective date of the Uniform Code, will, to some extent or under some circumstances, be handled under processes obtaining prior to that date. An uncritical following of this lead without more, of course, could result in the conclusion that, the offense of the accused having been committed prior to May 31, it was not improper to complete court-martial proceedings against him in accordance with the Articles of War and the Manual for Courts-Martial, 1949. Moreover, it might seem at this juncture that, having been so completed, these proceedings and subsequent action thereon will receive the "same effect as if this Act had not been passed"—that is, the effect of finality. See Articles of War 48 and 50. Indeed, support is

found for this view in the following exposition of Section 4 as recorded on page 37, House Report 491, 81st Congress, 1st Session, 1949:

"This section insures that the prosecution of offenses which are a violation of laws which will be repealed by this Act shall be completed under such laws in the same manner and with the same effect as if this Act had not been passed."

The principal difficulty with this is that the language of the Act as adopted by the Congress does not comport with the attribution of mandatory content to the word "shall," as used in the language quoted last above. Moreover, as we said in the case of United States v. Merritt (No. 53), 1 USCMA 56, 1 CMR 56:

"there are other statements made by members of Congress during the debates on the House and Senate floors which tend to contradict the explanation. [set out above] . . . while the word 'shall' is generally construed to mean imperative and mandatory, it may be interpreted to be permissive and directory. Particularly is the latter permissible when no benefit to any one depends on its being taken in an imperative sense and where no right is impaired by its interpretation in a permissive sense. Were we to interpret it here in its imperative sense we would deny certain accused the benefits Congress intended to extend to those being tried by military courts."

This reasoning accords with the term actually used in the Act. In it Congress stated that all offenses committed prior to the effective date of the Act may be prosecuted and action thereon may be completed in the same manner and with the same effect as if the Act had not been passed. Again, as we said in the Merritt case:

"It is a generally accepted rule of law that when the word 'may' is used in a statute the enacting body uses it in the permissive sense. In the case of Thompson et al. v. Lessee of Carroll, 63 U. S. 422, 434, the Supreme Court of the United States

announced the rule that the word 'may' will be construed as 'must' only when it is necessary to force that construction to give effect to the clear policy and intention of Congress; and that where there is nothing in the letter, spirit, or policy of the statute to require a forced construction it should be construed as permissive.

"We can find nothing in the act which forces us to conclude that Congress intended a forced construction of the word and the history of the legislation points otherwise. . . ."

We hold here, therefore, as we did in the Merritt case, that Section 4 does not demand the procedures preceding those provided in the Act of May 5, 1950 as to offenses committed prior to May 31, but rather that it only permits them. At this point we are faced with the question of who is to determine whether the old or the new processes are to be used. Shall this be left to the determination of the several services, or components thereof? Shall it be deemed proper to apply the one procedure to one case or category within a service or component and the other to a different one or ones? Manifestly not. The answer is found in Article 36, Uniform Code of Military Justice, which provides as follows:

"(a) The procedure, including modes of proof, in cases before courts-martial, courts of inquiry, military commissions, and other military tribunals may be prescribed by the President by regulations which shall, so far as he deems practicable, apply the principles of law and the rules of evidence generally recognized in the trial of criminal cases in the United States district courts, but which shall not be contrary to or inconsistent with this code.

"(b) All rules and regulations made in pursuance of this article shall be uniform insofar as practicable and shall be reported to the Congress."

Pursuant to the authority granted in this Article, the President, on February 8, 1951, promulgated Executive Order 10214, which placed in effect the provisions contained in the Manual for Courts-Martial, United States, 1951. The language of the Order is set out in pertinent part below:

"This manual shall be in force and effect in the armed forces of the United States on and after May 31, 1951, with respect to all court-martial processes taken on and after May 31, 1951: Provided, That nothing contained in this manual shall be construed to invalidate any investigation, trial in which arraignment has been had, or other action begun prior to May 31, 1951; and any investigation, trial, or action so begun may be completed in accordance with the provisions of the applicable laws, Executive orders, and regulations pertaining to the various armed forces in the same manner and with the same effect as if this manual had not been prescribed: . . . but, except as otherwise provided in the first proviso, the trial and review procedure shall be that prescribed in this manual."

It seems to us that in these terms, and for the purpose of establishing as near as may be a unified and orderly approach to the problems of transition from the old law to the new, the President sought to establish a single, armed forces-wide standard for determining what court-martial processes shall attend upon the commission of military offenses antecedent to May 31, 1951. The Act in Section 4 had provided that such offenses may be tried and otherwise acted on as they had been prior to its adoption; and the President thereafter and in implementation thereof supplied the rule for determining when the old procedures shall be applied and when the new. Let us see what he has had to say in the matter. At the outset he has made it clear that the new system shall apply as to all processes taken on and after May 31, except as otherwise limited by subsequent phrasing. It is notable that the word "processes," a term much broader than might have been chosen, is used in the language of the Order. Second, he has validated what has been done in any investigation, trial in which arraignment has been had, or other

court-martial action taken before the cut-off date. Third, he has authorized the completion under the older procedure of any investigation, trial in which arraignment has been had, or other action undertaken prior to that time. And, finally, he has specifically attributed the effect attaching under the Articles of War and the preceding Manual to any investigation, trial in which arraignment has been had, or other action begun before May 31, 1951. The result of these provisions, we believe, is to separate the court-martial process—using the last word in much the same sense in which it is used in the terms "judicial process" or "administrative process"—into successive phases or principal steps, and to permit the completion with the old system's finality of any phase initially undertaken prior to the effective date of the Act on which the new procedure is based. However, as to stages not begun by this date, the provisions of the new scheme are to apply. To spell the matter out—and at the risk of overelaboration—if an investigation of charges was initiated on May 25, 1951, it may be completed in conformity to the rules then existing, but if the accused is not arraigned thereon until June 1 he must be tried under the new system, albeit on the old charges. However, had he been arraigned prior to May 31 the old trial procedure would have obtained. Thus is provided an easy transition to the new scheme, and thus is avoided at once the necessity for a retracing of steps already taken and the necessity for the maintenance of two batteries of judicial machines and two sets of procedural notions during a considerable period of time. See United States v. Merritt, supra.

Approaching the specific problem involved in the case at bar, we are now confronted with the necessity for determining the meaning of "other action" as used in the Executive Order. Or to put it otherwise, granting that the Order contemplated phasing the court-martial process for the purposes outlined above, what and how many phases were intended? Certainly the investi-

gative stage is to be regarded as a principal step, for it is explicitly so characterized. Certainly, too, and for the same reason, the trial—with arraignment drawn as the line of demarcation—must be considered in this category. What then? Thereafter we are afforded as a specific guide only the words "other action." Can it be argued successfully that, as pre-trial and trial clearly constitute the first two phases, so the post-trial phase—including action by the appointing authority, action by a board of review, confirmatory action, and the like—constitutes a final third? Or is this violative of the content of the word "action," out of keeping with the realities of the court-martial process, or inconsistent with the spirit of the Order and the Act? It would seem to follow that if this conception of the phasing contemplated is accepted, we are without jurisdiction to review the instant record—for the terminal stage clearly having begun prior to the effective date of the Manual and the Act, it may be completed to finality under the old procedure—and this Court was not a part of that procedure.

From another point of view it has been argued that a realistic and practical view of the court-martial process requires five-stage phasing: pre-trial, trial, action by the appointing authority, appellate action, and confirmatory action. Accepting this analysis arguendo, we are met with the job of deciding whether the reference of the record of trial to the Judicial Council on May 29, 1951, constituted the beginning of the ultimate phase or principal step in the elaborate course of dealing with the accused's offenses which opened with the signing of charges on November 30, 1950. If it did, then we are sure that, in the language of Section 4 and the Order, it "may be completed . . . with the same effect as if this manual had not been prescribed" and "as if this Act had not been passed." On the other hand, if it did not—or, to phrase it differently, if steps subsequent to the handling given the record by the Judicial Council constituted "other action"—then we are equally sure that we are not without

jurisdiction to review the accused's record, if in the exercise of sound discretion we choose to do so. Posing the crucial question involved in this analysis of phasing in another manner, does the confirmation procedure, as provided in Article of War 48, under which the record was referred to the Judicial Council, constitute a principal step and include the concurrence of The Judge Advocate General, or shall the latter itself be regarded as a principal phase or step within the President's meaning? See Article of War 48(c), infra. If the former is true, then we believe we are without jurisdiction; if the latter, then we may take the case if we wish to do so. A four-stage phasing has also been suggested—involving pretrial; trial; appellate review, including action by the convening authority; and confirmatory action—and doubtless other approaches to the phasing problem may be proposed and defended with varying degrees of force.

We are of the opinion that only two approaches to the meaning of "other action," as used in the Order, are logically possible. One of them requires the treatment of everything which follows trial as a unit, and the other permits fragmentation. Under the first, "other action" is all post-trial action and once any single post-trial step is undertaken before the cut-off date all succeeding steps shall be completed with finality under the old procedure. Under the other approach, it is necessary that post-trial action be divided into reasonably separable stages, with the result that, as one of these stages is begun prior to May 31 under the old procedure, it may be completed thereunder, but that succeeding stages begun thereafter shall be dealt with under the new system. In view of the exceedingly sharp and obvious differences between these post-trial stages, and because of the desirability of bringing pending cases under the Code and the new Manual as rapidly as possible—implicit in the very idea of phasing itself—we cannot believe that the President intended a unitary treatment of all ingredients of post-trial procedure. We, therefore, reject the first interpretation and accept the second. Having done this, it is necessary that we determine the number and character of principal steps contemplated. In this connection we can conceive of no reagent more useful than that of function. Starting, therefore, with investigation and trial as phases numbers one and two, and viewing remaining action through the spectacles of function—of genuine difference in kind—we arrive at action by the convening authority as our third major phase. Sounding as it does in appellate review as well as in what might be termed junior-grade confirmation, this hybrid differs essentially from all which has gone before and all that follows. Our fourth phase is purely appellate in fundamental nature and consists of consideration by a board of review. The stage of confirmation—in substance and property unlike any of its predecessors—must constitute a fifth.

Turning now to the character of The Judge Advocate General's connection with the confirmatory step, we set out below all of the provisions of Article of War 48:

"In addition to the approval required by article 47, confirmation is required as follows before the sentence of a court-martial may be carried into execution, namely:

"(a) By the President with respect to any sentence—

"(1) of death, or

"(2) involving a general officer: Provided, That when the President has already acted as approving authority, no additional confirmation by him is necessary:

"(b) By the Secretary of the Army with respect to any sentence not requiring approval or confirmation by the President, when The Judge Advocate General does not concur in the action of the Judicial Council;

"(c) By the Judicial Council, with the concurrence of The Judge Advocate General, with respect to any sentence—

"(1) when the confirming action of the Judicial Council is not unanimous, or when by direction of The Judge Advocate General his participation in the confirming action is required, or

"(2) involving imprisonment for life, or

"(3) involving the dismissal of an officer other than a general officer, or

"(4) involving the dismissal or suspension of a cadet;

"(d) By the Judicial Council with respect to any sentence in a case transmitted to the Judicial Council under the provisions of article 50 for confirming action."

It is our opinion that under the quoted language the concurrence of The Judge Advocate General is an integral part of confirmation and is not to be regarded as "other action"—that is, as a distinct and principal step in the court-martial process. Confirmation is not required by the Articles of War in every case—even in every general court-martial case. Where it is required it takes differing forms under the language of Article of War 48. It demands the action of the President in certain cases, that of the Secretary of the Army or Air Force in others, and that of the Judicial Council, with or without the concurrence of The Judge Advocate General, in still others. Whatever the form directed, however, the process is still confirmation. Since the sentence in the instant case, as approved by the board of review, involved the dismissal of an officer other than a general officer, confirmation was required. Because of this, too, the concurrence of The Judge Advocate General in the action of the Judicial Council is specified as an ingredient of the process. There was no confirmation until he had acted, and once he had acted affirmatively under the facts of this case, the confirmatory process was complete. His and the Council's individual actions were parts of an indivisible and indissoluble whole—and this is in nowise affected by the fact that conceivably he might have withheld concur-

rence and thus transferred the case to the hands of the Secretary of the Air Force under Section (b) of the cited Article.

The net of all this is, and we so hold, that for the purposes of the present case the court-martial process was divided by the Executive Order into five major and principal phases, and that the terminal one of these is confirmation, in which the participation of The Judge Advocate General is an integral part. Since Article of War 48 required confirmation in the present case by the Judicial Council, with the concurrence of The Judge Advocate General, and since the record of trial was transmitted to the Council, and the phase of confirmation begun, prior to May 31, 1951, it follows that an assumption of jurisdiction to review the record by us would be inconsistent with the clear intent of the Executive Order and Article of War 50h. Once confirmation was initiated prior to the cut-off date—as it was here—it might be completed; and once this unit of "other action" had been taken nothing remained save the purely formal and ministerial business of execution. This latter, we believe, is not to be enumerated among "processes," as this term is used in the opening sentence of the Order, nor is it "trial and review . . . prescribed in this manual," as this phrase is used in the final language thereof. Certainly in this case execution is not to be taken as a sixth phase of the court-martial process—and this is unaffected by the provision of Article of War 51 that such nonministerial matters as remission, suspension, and mitigation shall be considered at this time. These are regarded by us as sounding in executive clemency and not a part of the judicial aspect of the problem of concern to us here.

In short, we are sure that from a reading of all four corners of every directive concerned in a disposition of the problem before us there arises a clear intendment to substitute for con-

siderarion and action by the Judicial Council under the old procedure, review by this Court under the new. To hold otherwise would involve the retracing of steps animadverted upon by us explicitly in the Merritt case. It will be recalled in this connection, that, at one stage of the drafting of the Uniform Code, this Court was not characterized as such at all, but rather as "the Judicial Council," albeit composed of civilian members, and removed from the organization of any military service. See Index and Legislative History, Uniform Code of Military Justice, pp. 582, 604. A further reason for our opinion that such substitution was contemplated is found in the language of the Code's Article 67(b) and (c) where, in every instance in which the matter is treated, this Court's authority is confined to cases "affirmed" or "reviewed" by a board of review. It will also be recalled that such agencies were used under the old procedure only in the Army and the Air Force. It would not, therefore, have been possible under the specific phrasing of Article 67(b) and (c) for this Court to have assumed jurisdiction over this present case had it come to us in similar posture from the Navy, the Coast Guard, or the Marine Corps. It seems irrational to suppose that this discrimination between the personnel of the several services was intended. In negative support of this view it is also to be observed that the language of Article 67(b) and (c) contains no reference to the possibility of review by this Court of a case "affirmed" or "reviewed" by a judicial council. Had Congress intended to provide for such a review following confirmation action by a judicial council, it would have been a comparatively easy matter to have indicated the intention expressly and with clarity.

In support of the conclusion reached by us on the single question involved in this case, it has been argued that we are without jurisdiction because of the provisions of Article of War 50h, which are set out below:

"The appellate review of records of trial provided by this article, the confirming action taken pursuant to articles 48 or 49, the proceedings, findings and sentences of courts-martial as heretofore or hereafter approved, reviewed, or confirmed as required by the Articles of War and all dismissals and discharges heretofore or hereafter carried into execution pursuant to sentences by courts-martial following approval, review, or confirmation as required by the Articles of War, shall be final and conclusive, and orders publishing the proceedings of courts-martial and all action taken pursuant to such proceedings shall be binding upon all departments, courts, agencies, and officers of the United States, subject only to action upon application for a new trial as provided in article 53."

We do not agree at all that this language, adopted as it was to serve a general full faith and credit purpose, has any bearing on the present problem. This Court either has or is without jurisdiction to review the record before it. We have determined that we are without the requisite authority—and in reaching this result we were moved entirely by other principles, and to no extent whatever by the terms of the quoted section. Certainly this Court is not to be included within the content of the word "courts," as used therein. Had we determined the question otherwise—and we could have done so, so far as Article 50h is concerned—we are certain, indeed, that in exercising jurisdiction to review we would not be bound by the action of the judicial council concerned.

We are told that, being remedial in character, the provisions of Article 67 (b), Uniform Code of Military Justice, should be construed liberally so as to carry into effect the will of the legislature as expressed in the terms thereof, and to give, not meanly or niggardly, but fully and generously, all that the statute purports to give. We are also particularly and accurately advised that this canon has been applied repeatedly to legislative and constitutional provisions conferring, extending or regulating the right of appeal. We have no disposition whatever to deny either the general principal invoked or its proper

and specific application to appellate review. At the same time we feel that, however respectable and appropriate, they were never intended to chart a course away from clear statutory intendment. If, after a consideration of the authorities relevant to a determination of the problem before us, we entertained any shadow of doubt in the premises, we would without hesitation have recourse to this guidepost, the social policy of which is sound and valuable beyond question. In the present case, however, we do not find the necessary uncertainty.

It follows from what has been said that we are without jurisdiction to review the petitioner's case, and we so hold. Therefore, the petition is dismissed.

Chief Judge QUINN and Judge LATIMER concur.