UNITED STATES, Appellee

v

WALLACE BELL, Private E–2, U. S. Army, Appellant

6 USCMA 392, 20 CMR 108

No. 5316

Decided September 23, 1955

*Lieutenant Colonel George M. Thorpe* was on the brief for Appellant, Accused.

*Lieutenant Colonel William R. Ward* and *First Lieutenant Elliott H. Eisman* were on the brief for Appellee, United States.

## Opinion of the Court

PAUL W. BROSMAN, Judge:

Bell, the accused in the case before us, was charged with having committed a rape on July 12, 1953, in violation of the Uniform Code of Military Justice, Article 120, 50 USC § 714. On August 12–13, 1953, he was tried by a general court-martial, was found guilty, and was sentenced to receive a dishonorable discharge, as well as total forfeitures and confinement at hard labor for twenty-five years. The convening authority approved the findings and sentence, and on December 11, 1953, a board of review in the office of The Judge Advocate General, United States Army, rendered a decision which affirmed the findings, but reduced the sentence to confinement by five years.

II

The accused appears not to have been subjected to psychiatric examination before his trial for this capital offense, and the question of his sanity was in no way raised at the *nisi prius* hearing.

394

Indeed, there is nothing in either the Article 32 investigation, or the record of the trial itself, which suggests a want of either mental responsibility or capacity. However, while in post-trial confinement during the following autumn the accused manifested symptoms of mental disorder, and on October 23 was transferred to Letterman Army Hospital. A medical board, which met there on March 5, 1954, found that he then suffered from "Schizophrenic reaction, catatonic type, chronic, manifested by mental retardation, somatic complaints, open hostility, auditory hallucinations, negativism, retarded psychomotor activity, flattened affect and catatonic posturing." Additionally, this board found that the accused had been responsible at the time of the crime's commission, and had possessed mental capacity at the time he was tried. However, its members recommended that the remainder of his sentence to confinement be remitted, and that he be discharged to a state mental institution for treatment and custodial care.

A subsequent statement from the office of The Surgeon General, United States Army, notes that "The prisoner has a chronic psychotic disorder. This will probably continue for an extended period of time but is probably not permanent." Because "prolonged hospitalization of prisoners in Army hospitals is discouraged as a matter of policy," it was recommended "that the prisoner be transferred to a federal prison system hospital if suitable arrangements can be made." It is the understanding of this Court that the accused is now confined in a mental institution under the supervision of the Federal Bureau of Prisons.

The accused was not served personally with a decision of the board of review because of his mental condition. However, The Judge Advocate General of the service concerned designated as military appellate counsel to represent him in presenting to this Court a petition for grant of review the lawyer who had previously represented him before the board of review. On July 15, 1954, this attorney filed such a paper —which contained numerous assignments of error—but at almost the same moment moved to dismiss the charges because of the accused's insanity. This motion we denied without prejudice pending disposition of the petition for review.

III

The first issue which requires a decision by us relates to the effect to be accorded insanity initially discovered after completion of an accused's trial. In United States v Washington, 6 USCMA 114, 19 CMR 240, we considered whether, in a capital case, this Court possessed jurisdiction to complete appellate review. Our answer was in the clear affirmative. The reasons presented there by the majority for its determination of the question are fully applicable to sustain a conclusion that we also possess jurisdiction to complete review where the sentence does not extend to death.

The medical board's report here asserts that the accused's mental incapacity originated during October 1953—long before the decision of the board of review was handed down. Indeed, since the convening authority's action in the case did not occur until October 10th, it is unclear whether the medical board would have concluded that the onset of insanity preceded the date of that action. Accordingly, it is fitting to comment on the effect the post-trial insanity of an accused should have on the power of either a convening authority or a board of review to act on a record of trial.

We believe that the rationale of the Washington case must control. To be sure, it must be conceded that the convening authority is empowered freely to wander outside the record in the accused's behalf. United States v Massey, 5 USCMA 514, 18 CMR 138. Therefore, the situation is somewhat different from that which obtains on this Court's level, where—save in acting on petitions for new trial—issues of law constitute the only subjects of deliberation. We are sure, however, that the inability of an insane accused to supplement the record with information which might conduce to a favor-

**395**

able exercise of the convening authority's discretion does not constitute a sufficient reason for holding that this official lacks power to review the former's case. Of course, if data outside the record bears on the accused's innocence, and amounts to newly-discovered evidence, which was not presented at the original hearing without fault on the accused's part, it may be the subject of a petition for new trial. As we remarked in Washington, we are confident that the right to submit such a petition does not expire during a period of insanity, and therefore will remain available to the accused once he recovers from his affliction.

Concerning action by the convening authority, yet another observation seems appropriate. If the ▉▉▉▉▉▉▉ insanity had come about before this action, we suggest that the convening authority should detail a qualified legal officer to conduct a search for information or circumstances which might produce a result favorable to the accused on review of the findings and sentence. In this way the officer who appointed the court will be enabled to accomplish a more informed exercise of his discretion.

Unlike this Court, the several boards of review do possess authority to determine issues of fact and to ▉▉▉▉▉▉ act on the sentence. However, generally speaking, they are limited to the evidence presented in the record of trial, and are not permitted to supplement that document. Of course, there are instances where this limitation will not apply— and thus evidence bearing on the accused's possible lack of mental responsibility and capacity, or having to do with the court-martial's jurisdiction to try him, may be weighed by the board, although not offered at the trial. See, e. g., United States v Burns, 2 USCMA 400, 9 CMR 30; United States v Garcia, 5 USCMA 88, 17 CMR 88; United States v Ferguson, 5 USCMA 68, 17 CMR 68.

As to the issue of jurisdiction with respect to an allegedly insane accused, one reply has been that the rights of such a person can never be prejudiced by his inability to present to the board evidence concerning a want of this requisite. According to this argument, there are two basic alternatives: (a) action by the board, or (b) refusal of the board to act on the record. If the latter course is adopted, the accused will remain in confinement pending completion of appellate review, which will not be accomplished until recovery of his mental health. If the former path is followed, however, then there are again two possibilities. One is that the court-martial did, in fact, possess jurisdiction over the accused, in which event his rights will not have been prejudiced. If, on the other hand, the tribunal which tried him was without jurisdiction, then all proceedings—this argument runs—are null, including the review of the case by the board. If the board discovers a lack of jurisdiction, then the accused will be released from confinement under military authority immediately, and will not be held indefinitely, as would have been the case had the alternative of denying review of the record in the first instance been accepted. If, on the other hand, the board erroneously holds that jurisdiction does exist, the accused is in no worse position than he would have been had he been held in custody until the completion of appellate review. Moreover, he will be free to attack military jurisdiction in the civilian courts, and will in no degree be bound by the board's decision on the point.

Possibly this argument may be said to overlook some of the subtleties of the problem—but we need not pass on its validity. Suffice it to say that, in the instant case, there can be no slightest doubt of the jurisdiction of the military authorities over the accused soldier, as to which question he might conceivably have been prejudiced when the board of review acted on his case.

It has been urged that an accused person, who has become insane since trial, is thereby hampered substantially in any attempt his lawyer may make to show that he lacked mental responsibility at the time of the crime or mental capacity to cooperate in this defense. This possibility of harm we believe to be chimerical—for we are sure

that psychiatric examiners will meet, at the least, with as much success in discovering mental irresponsibility and want of capacity if the accused is insane after trial as they would if he were sane at that time. As a matter of fact, and in light of universally accepted psychiatric principles, the accused's position is generally more favorable in this respect when he *is* insane after trial. Since the etiology of most mental diseases is buried to some extent in the past—in childhood, say, perhaps even infancy—it is appreciably more difficult to reconcile present mental health with an hypothesis of past insanity than to reconcile present insanity with that same hypothesis.

For those who are unsatisfied with this response, let us pose a paradox. When an accused is brought to trial and pleads the existence of insanity which is said to deprive him of the ability to cooperate with counsel, two logical possibilities are present. The first is that he is in fact sane, and the second that he is not. But if he is insane, how—it may be asked—can he cooperate with counsel in showing the existence of such a condition? It would seem to follow under this reasoning, therefore, that trial should proceed in no case once the defendant has pleaded mental incapacity to stand trial. This seems to us to be the identical argument which would maintain that an accused person will be prejudiced if we are to permit a board of review to pass on his mental responsibility and capacity when it is clear that he is insane at the time of the proposed board action. The argument's wholesale unacceptability is graphically demonstrated by the fact that in every jurisdiction courts *do* proceed to rule on pleas of mental incapacity without disturbing themselves about the "danger" that, if he is insane, the accused may not be able to cooperate with his counsel in showing that this is the situation.

When all is said, the limitations on the power of a board of review to stray beyond the record of trial in acting on findings and sentence convince us that this agency is entitled—on the basis of both theoretical and functional reasons—to review the record of trial of one who has become insane following conviction. Accordingly, we hold that in the present case, no impediment existed either as to appellate review by the board or to the earlier action of the convening authority.

## IV

In the Washington case no clear showing was made that the accused was in an insane condition when the board of review affirmed the court-martial's findings—and certainly the board had no notice of any possible mental disorder. In the present case, however, the accused's disability became known long before the board's decision—in fact it necessitated his transfer to Letterman Army Hospital. For some odd reason, though, neither appellate defense counsel nor the members of the board of review appear to have been cognizant even of the accused's post-trial location—much less his mental status.

It is improbable that this circumstance affected in any degree either the care with which the record was reviewed at the board level or the ultimate determination by that tribunal's members. However, this unlikelihood does not preclude us from directing that the board reconsider the present case. Cf. United States v Strand, 6 USCMA 297, 20 CMR 13. On such a reconsideration, it is open to this agency to consider all available evidence which may conceivably shed light on the accused's mental responsibility and capacity. United States v Burns, supra. Thus, *for the first time in this confused situation,* there will be made available findings with respect to the accused's sanity, at the time of the crime and at that of the trial, rendered by a judicial agency with power to pass on questions of fact. Cf. United States v Washington, supra.

## V

The suggestion has been voiced that this case is not properly before us in any event for the reason that there was no service of the decision of the board of review on the accused—this because he was insane at the critical time. It

**397**

is clear, of course, that the Uniform Code demands that an accused be "notified of the decision" of the board of review in the proceedings involving him. Article 67(c). See also United States v Marshall, 4 USCMA 607, 16 CMR 181. However, we do not doubt that this requirement must be interpreted realistically. For instance, if a sane accused person were to absent himself without authority prior to the rendition of the board's decision in this case, it seems clear that this circumstance would not deprive of power to complete appellate review. Cf. United States v Houghtaling, 2 USCMA 230, 8 CMR ·30. Similarly, we are sure that the post-trial insanity of a criminal defendant does not prevent the completion of review, and that in such a case there is at least one procedure available whereby a notification which will comply with the Code's mandate may be accomplished.

In this connection we observe that the Federal civilian practice appears to accord considerable freedom to a court with respect to the protection of the interests of incompetent persons before it. Thus, Rule 17(c) of the Federal Rules of Civil Procedure provides that "The court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action *or* shall make such other order as it deems proper for the protection of the infant or incompetent person." (Emphasis supplied.) It has been held that, under the plain language of this rule, the appointment of a guardian ad litem is not mandatory. Westcott v United States Fidelity and Guaranty Co., 158 F2d 20 (CA 4th Cir).

The service of process on incompetents in Federal proceedings is dealt with "in the manner prescribed by the law of the state in which the service is made." Rule 4(d), supra. In certain jurisdictions, therefore, the appointment of a guardian ad litem will constitute mandatory action, while in others it will not. See Zaro v Strauss, 167 F2d 218 (CA 5th Cir); Scott v United States, 190 F2d 134 (CA 5th Cir). Of course, even where the selection of such a guardian is required by local law, the failure to effect an appointment serves to make the judgment no more than voidable—following a showing that the incompetent possesses a meritorious defense and was not properly represented. Scott v United States, supra.

We are unwilling for many reasons to cause the service of a board's decision on an incompetent to hinge on the law of the *locus*—on occasion, indeed, a place outside the continental limits of the United States. Nor, of course, does reason exist for demanding that personal service be made on the incompetent himself—since this would often amount to no more than a meaningless gesture. Further, we find no cause to require the creation of a formal guardianship to accomplish this purpose.

Ultimately, we believe, the solution is to be found in Article 70 of the Uniform Code, 50 USC § 657—in which Congress has provided that The Judge Advocate General of the Service concerned shall appoint appellate counsel to represent accused persons before boards of review and this Court. Indeed, these military defense counsel were genuinely meant to serve as functionaries roughly and generally in the nature of guardians or curators as to all accused persons whose cases are to be reviewed under Articles 66 and 67. Why then should they not be qualified within the present context to serve as "guardians" for the purpose of accepting service of the decision of a board of review? This procedure is believed to be both simple and fully consistent with the Code's intendment; and it meets a distinct need with respect to a problem concerning which the draftsmen of the Federal Rules of Civil Procedure declined to provide a generalized answer.

In short, when there exists doubt of an accused's competency—even in the absence of inquisition or commitment—the board's decision should be served on an official who would, for the purpose of accepting service, play the role of a guardian ad litem so frequently used in civil cases of the civilian community. Cf. Zaro v Strauss, supra. This official may be either the Chief of the Defense Appellate Division of the appropriate Armed Service or else that

member of the Division's staff who represented the accused during the hearing before the board. Thereafter steps will be taken here to assure that the insane convict receives every protection in the review of his case in this Court. See United States v Washington, supra.

## VI

In the instant cause there appears to have been substantial compliance with the outlined mode of service, and so—since we must remand in any event—we have not hesitated to detail our views on the more significant problems presented by this record. Of course, once the board renders its decision on reconsideration, formal service thereof may be accomplished in the manner indicated. Therefore, the record of trial is remanded to the board of review for further action in accordance with the principles enunciated herein.

Chief Judge QUINN concurs in the result.

LATIMER, Judge (concurring in part and dissenting in part):

I concur with the author Judge insofar as he takes reversive action with respect to the decision of the board of review, but I dissent as to what may be done thereafter. Because I am unable to ascertain the areas of agreement between my associates, I record my opposition to some of the views expressed by the author Judge. The concepts expressed here supplement the principles I relied on in my dissent in United States v Washington, 6 USCMA 114, 19 CMR 240.

There is no showing in this entire record that the accused was insane at the time the convening authority acted, and 1 would not mention that facet of this case had the author Judge not dwelt in that area. In my view, neither the convening authority, nor the board of review, nor this Court can proceed with the review of a case, if the accused becomes insane after his trial by court-martial, but before the convening authority takes action. The proceedings should be stayed at the level where insanity is proven, to await

further consideration when, and if, the accused regains his mental health. See my dissenting opinion in United States v Washington, supra.

The convening authority is relatively unfettered in the action which he may take to benefit an accused, but he is limited if his action is otherwise. While an accused is not entitled to representation before him, his action is a necessary part of appellate review. United States v Sonnenschein, 1 USCMA 64, 1 CMR 64. He has the power to weigh evidence and to disapprove findings and sentence for any reason, United States v Massey, 5 USCMA 514, 18 CMR 138, and to entertain various motions, United States v Stringer, 5 USCMA 122, 17 CMR 122. But if it is judicially called to his attention that the accused is insane, he ought not to take any action which will foreclose the accused from presenting fully all matters touching on both findings and sentence when sanity is regained. Certainly, the reviewing officer is charged with knowledge that the accused cannot assist himself or his counsel in presenting many matters which might influence a favorable ruling, and, from my point of view, he abuses his discretion if he affirms a finding or sentence after it is shown to his satisfaction that an accused became insane prior to the time when the record was reviewed. It is suggested that counsel could be appointed to carry on for an accused during the period between finding and affirmance and that an adequate review can be guaranteed in that way. Apparently the view is taken that a lawyer is a substitute for sanity, but I have grave doubts that that is a fair trade. But more important and more to the point is the fact that once an accused becomes legally insane, counsel has no client with whom he can deal intelligently. I wonder if sufficient consideration has been given to the difficulties encountered by a lawyer who is called upon to represent a person who is not in his right mind. It can hardly be contended that his most important source of information has not dried up, or that counsel is not handicapped by a lack of effective coopera-

tion. Even when dealing with property rights, civil courts guard jealously the rights of insane persons, and require court approval before important decisions can be made, but here life and liberty is bandied about by saying, in effect, "assign counsel to an incompetent and all will be protected." Such should not follow, and I point out one valid reason for that conclusion. Under the majority rule, the convening authority is required to act, and his action initiates the running of the time for filing a petition for new trial. The loss of that benefit is redressed by offering the gratuitous advice that we can toll that period. I suggest that if appellate processes are permitted to continue, for us to isolate that one right and protect it alone without Congressional sanction, is judicial legislation of the most flagrant sort. Certainly, it would appear to me that if there is any justification in law or logic to stay one part of the appellate judicial processes, all should be stayed. Instead of a clear-cut holding that a bar has been erected, a filter is constructed by which it is proposed to block the flow of certain rights and remedies while the balance runs out to sea. That concept makes this Court a super legislature, breeds confusion and uncertainty, makes administration most difficult, and leaves counsel with the unhappy choice of binding an insane person without prior judicial sanction. From all of this, it is my considered conclusion that if a lawyer is the alter ego of an accused for all other purposes, he must be so for the purpose of initiating a petition for new trial.

Now as to the authority of the board of review to proceed. That agency has fact-finding powers and this Court has permitted it to wander factually far afield from the record of trial. More than matters of law can be presented to that tribunal, and while a trial de novo is not contemplated, factual issues not raised at trial may be decided. The issue of insanity can be raised for the first time at that level and the evidence shows clearly that this accused was insane at the time the board heard

his case. The record does not show that appointed appellate defense counsel was apprised of the fact that he was dealing with an insane client, and it would appear certain that had he been so informed, efforts would have been expended to raise properly the issue of mental responsibility and mental capacity. Contact between military appellate counsel and client is usually by mail, and I believe it is expecting too much to anticipate that an insane person would notify his counsel of his lack of mental capacity. Therefore, it should be apparent to the observing that this case demonstrates why appellate processes should be stopped once insanity is found to exist. The only counsel with a fair opportunity to observe the mental condition of the accused was defending counsel at the trial level, and if, as the experts say, the accused was sane at that time, that attorney would not be put on notice of the incompetency. He would have no occasion to alert appellate defense counsel of the mental condition of the accused. Yet, all of the post-trial rights to which an accused is entitled have been adjudicated against him, while his counsel was uninformed that a mental defect made the bare record of trial the sole source of matters which could be asserted before the board of review. Perhaps the rejoinder of my associates will be that they are willing to allow the board of review to start all over again. But that is no answer. The handicap under which both accused and counsel will operate cannot be removed by judicial fiat and no amount of professional skill will make up for the unavailability of the mind of the person who should know the true facts and the avenues of reaching them. It may well be that in this particular instance this accused might not be able to save himself, but he should not be denied the opportunity to do so.

Before proceeding to our power to act in the present proceedings, I pause to answer the argument advanced by the author Judge that to follow my reasoning would prevent the court-martial from hearing any case once insanity was asserted. The argument sounds much like the platitudes of those

400

who argue that a court does not have jurisdiction to determine whether it has jurisdiction. Obviously, a man is presumed sane and if an issue is raised to the contrary, a court can hear evidence to determine that question. If it finds him insane at the time of the offense, it must return a finding of not guilty, not because he did not commit the offense, but because he was not responsible mentally. If it finds the man sane at the time of the offense and at the time of trial, implicit in that finding is another finding that he can assist in his own defense and the trial goes on. There is no stalemate in that situation. Again, if the court finds the man insane at the time of trial, then it follows that he cannot be of assistance to his counsel and the proceedings must, by specific direction of the Manual, be stayed. I ask, why does anyone contend that those principles prevent a court from reaching the very heart of the question of sanity? The contention, at best, is merely a strawman which clouds the main issue. We are not here concerned with the power to determine a controverted question of fact and—conditioned on that finding—the authority or lack of authority to continue with the judicial processes. Everyone concedes this accused became insane shortly after trial and his mental condition has not improved. Our problem is hypothecated firmly on that conceded mental state.

If comparisons are in order, the most egregious misconception I find in the author's opinion is based on the holding that we have the authority to proceed. The Code provides in Article 67(c), 50 USC § 654: "The accused shall have thirty days from the time he is notified of the decision of a board of review to petition the Court of Military Appeals for a grant of review." The Judge Advocate General of the Army apparently realized that he could not serve notice on an insane person and no service has been effected. In an abortive attempt to have this Court act, counsel was appointed to take over. He appreciated his dilemma, filed a petition, and then moved to dismiss. The appointment of counsel is not a substitute for service on an accused, and I am truly concerned about a concept which permits a third and unrelated party to assume authority to act for one who is incompetent. I am certain that we could not obtain jurisdiction by that method if the accused was sane, and yet both of my associates agree that an insane man need not be served personally because he could not help himself and his assistance to his counsel would be of no value. I have heard of guardians, after notice and hearing, being authorized by courts to accept service in civil cases but this is my first experience with a constructive appointment in a criminal case. In this instance, it is interesting to note the author Judge relies entirely on civil cases and he gives no heed to the rights of any interested party. He merely suggests obscurely that appellate defense counsel shall be a guardian ad litem, or curator, for the purpose of dealing with the rights of an accused. What an innovation that is to criminal law. Without petition, hearing, or notice to the interested parties, he says that because The Judge Advocate General of the Army has detailed an officer to represent the accused, this Court will now clothe him with the powers of accepting service. It is not surprising that neither the members of Congress nor the Manual draftsmen provided for such a procedure as this. They never conceived of such a novel theory. I can at least agree that such a short cut is simple, but it does violence to my understanding of criminal law and procedure. However, if simplicity is to be the touchstone, why not legislate without trying to pervert legal principles applicable only to civil cases? If this Court must become a legislative body—and the results of this indicate it is—it ought to enact a provision which has some logic to recommend it. Were I to join my associates in their avid desire to process cases of this type, I would do away with incomprehensible expedients and proclaim boldly that an insane accused is entitled to an automatic review. That, to say the least, offers a method which does no violence to well-understood

principles of criminal law even though it, too, becomes judicial legislation.

Although some arguments have been advanced to suggest several theoretical benefits which might accrue to an accused if appellate review is permitted to run its course, I regard them as lacking merit. According to the medical experts, recovery is doubtful, and at the present time the accused reposes in a mental installation for Federal prisoners. The maximum benefit which he could derive from appellate review would be a reversal of his conviction, and so long as he remains insane he could not be retried. That would only mean confinement in another mental institution under other supervision. At the present time, he is an unsentenced prisoner, and—because of his condition —no less strict supervision would be required in the event of favorable action by us.

If I understand the author's opinion, I read it to say that this accused might be benefited because his insanity developed during appellate review. It is said there that it will be easier for appellate defense counsel to show the board of review that the accused was mentally irresponsible at the time of the offense, or the time of trial, because he is now hopelessly insane. I do not choose to pit my knowledge of psychiatry against the skill and wisdom of the medical experts and they all agree that the accused was mentally sound, both at the time of the offense and at the time of trial. Furthermore, that opinion was expressed by the same experts who concluded the accused was insane when examined some eight months after the offense was committed. No lay witnesses offered evidence which in any way weakens the conclusions of the doctors, and the sworn testimony of the accused at trial discloses that he was mentally capable of distinguishing right from wrong and adhering to the right. Such being the case, and pretermitting any other legal irregularities, because they have once been ruled on, what can a board of review do conscientiously but affirm the findings and sentence?