UNITED STATES, Appellee

v.

LEHMAN C. BURNS, Private, U. S. Air Force, Appellant

2 USCMA 400, 9 CMR 30

No. 847

Decided April 15, 1953

COL Kenneth B. Chase, USAF, and LT COL William H. Ward, Jr., USAF, for Appellant.

COL Wendell C. Dreier, USAF, and MAJ William E. Shannon, USAF, for Appellee.

## Opinion of the Court

GEORGE W. LATIMER, Judge:

Accused was tried, and found guilty, of assault with intent to commit murder, in violation of Article 134, Uniform Code of Military Justice, 50 USC § 729, and robbery, in violation of Article 122, Uniform Code of Military Justice, 50 USC § 716. The convening authority modified the sentence imposed by the court-martial but approved the findings. A board of review in the office of The Judge Advocate General of the Air Force, one member dissenting, affirmed.

At an appropriate time in the trial of the cause defense counsel made a motion to dismiss the charges and specifications on the ground that at the time of the commission of the offense, the accused was legally insane. The motion was supported by the testimony of a psychiatrist who examined the accused shortly after the crimes were committed. The medical expert testified substantially as follows: That the accused was sane at the time of the trial; that, therefore, he was able to understand the nature of the proceedings against him and cooperate in his defense; that the accused had a personality defect described as a schizoid personality, verging into a latent schizophrenic reaction; and, that at the time the crime was committed the accused was legally insane in that he was unable to adhere to the right.

The foregoing testimony was not contradicted by any other expert witness as the prosecution, after a denial of the motion, presented its case by merely proving all the elements of the crimes. After the taking of testimony had been completed and after the law officer had instructed the court, the president inquired if the question of the accused's sanity was before the court for determination, or whether the law officer's ruling was final. The law officer replied as follows: "The question of insanity still is before the court, and it

**401**

is a matter for the court to consider. If in their own minds or a sufficient number of minds, they find the accused is insane, then there can be no finding of guilty." The court-martial retired and in short order returned a finding of guilty.

The convening authority, in reviewing the record, must have entertained some doubts about the sanity of the accused for he ordered a further mental examination by a board of officers. This board, composed of one psychiatrist and two doctors, reached the same conclusion as the psychiatrist at the trial, i.e., that the accused was under an irresistible impulse at the time of the offense and could not adhere to the right. In spite of this finding, the only action taken by the convening authority was to reduce the sentence. Some two months later, and at the request of The Judge Advocate General of the Air Force, the Surgeon General of that service reviewed the record, disagreed with the other experts, concluded that the accused was sane and suggested that no further medical and psychiatric examination was necessary. A majority of the board of review in considering this aspect of the case determined it would not be proper for them to consider the reports of the board of medical examiners appointed at the request of the convening authority and the one furnished by the Surgeon General.

After the board of review had affirmed the conviction and sentence, The Judge Advocate General of the Air Force certified the following questions to this Court for decision: (1) Whether the statement by the law officer to the members of the court that: "If in their own minds or a sufficient number of minds, they find the accused is insane, then there can be no finding of guilty," materially prejudiced the substantial rights of the accused, and (2) Whether the board of review in determining the legality of the approved findings of guilty and sentence could consider the reports of the medical officers obtained after the trial of the case.

## I

Because of the importance attached to insanity in the trial of cases we believe the first question should not be answered without, at the same time, expressing our views on the necessity of the law officer giving complete instructions when lack of mental capacity is raised. All parties concede accused's sanity was in issue, so we pass to a discussion of the principles involved.

The quoted reply of the law officer, as a statement of law, if not incorrect, is so confusing and misleading as to be easily misconstrued. In view of this, and in the total absence of other instructions on insanity, this statement was prejudicial. We need not reason out in detail whether the instruction misstates the law as it is sufficient for our purpose to show that it does not inform the court as to the correct principles. The test announced by the law officer could readily be misinterpreted to the detriment of the accused. The court-martial was told that if a certain number found the accused insane he could not be found guilty. But no mention is made of the burden and degree of proof. The court-martial could have concluded the accused must establish his insanity to their satisfaction. Moreover, they could have assumed that he must establish it by a greater degree of proof than is necessary. The only duty we know which is imposed on the accused is that he produce sufficient evidence of insanity to place it in issue. If he does this, then the Government must prove sanity in the same manner and to the same degree as it does other issues. The military rule is stated in paragraph 122a, Manual for Courts-Martial, United States, 1951, wherein it is stated:

". . . . When, however, substantial evidence tending to prove that the accused is insane (120c) or was insane at the time of his alleged offense (120b) is introduced either by the prosecution or by the defense or on behalf of the court, then the sanity of the accused is an essential issue. If, in the light of all the evidence, including that supplied by the presumption of sanity, a reasonable doubt as to the mental respon-

sibility of the accused at the time of the offense (120b) remains, the court must find the accused not guilty of that offense. . . . . The burden of proving the sanity of the accused, like every other fact necessary to establish the offense alleged, is always on the prosecution, but it is not incumbent upon the prosecution to introduce any evidence tending to prove the sanity of the accused until the question of sanity becomes an issue in the case."

That the rule announced in the Manual is substantially the same as the Federal civilian rule may be gleaned by reading the quotations from the three following cases. In Davis v. United States, 160 US 469, 40 L ed 499, 16 S Ct 353, the United States Supreme Court expressed the law in the following way:

"We are unable to assent to the doctrine that in a prosecution for murder, the defense being insanity, and the fact of the killing with a deadly weapon being clearly established, it is the duty of the jury to convict where the evidence is equally balanced on the issue as to the sanity of the accused at the time of the killing. On the contrary, he is entitled to an acquittal of the specific crime charged if, upon all the evidence, there is reasonable doubt whether he was capable in law of committing crime.

. . . . . .

"Upon whom, then, must rest the burden of proving that the accused, whose life it is sought to take under the forms of law, belongs to a class capable of committing crime? On principle, it must rest upon those who affirm that he has committed the crime for which he is indicted. That burden is not fully discharged, nor is there any legal right to take the life of the accused, until guilt is made to appear from all the evidence in the case. The plea of not guilty is unlike a special plea in a civil action, which, admitting the case averred, seeks to establish substantive grounds of defense by a preponderance of evidence. It is not in confession and avoidance, for it is a plea that controverts the existence of every fact essential to constitute the crime charged. Upon that plea the accused may stand, shielded by the presumption of his innocence, until it appears that he is guilty; and his guilt cannot, in the very nature of things, be regarded as proved, if the jury entertain a reasonable doubt from all the evidence whether he was legally capable of committing crime."

In Tatum v. United States, 190 F2d 612, the United States Court of Appeals for the District of Columbia stated:

"When lack of mental capacity is raised as a defense to a charge of crime, the law accepts the general experience of mankind and presumes that all people, including those accused of crime, are sane. But as soon as 'some evidence of mental disorder is introduced, the prevailing rule in most jurisdictions is that sanity, like any other fact, must be proved as part of the prosecution's case beyond a reasonable doubt.' . . . ."

In an earlier case, Holloway v. United States, 148 F2d 665, the same court announced the rule in this language:

"In a criminal trial where insanity is put in issue, the burden is on the accused to overcome the presumption of sanity by evidence sufficient to create a reasonable doubt as to his mental capacity to commit the offense. When that is done, the burden is on the prosecution to establish the sanity of the accused. In such a situation the jury must be instructed that in order to convict they must believe beyond a reasonable doubt that the defendant was sane at the time of the offense. It is argued that the facts in this case are such that no jury could convict if it properly followed such an instruction."

Government counsel argue that it is more reasonable to assume that the court followed the reasonable doubt rule announced by the previous authorities, than it is to assume that it followed some other rule. The predicate for this

argument is the common sense of the members of the court-martial and the presence of and reference to the paragraph of the Manual. The difficulty with this argument is that the Court has ruled on a number of occasions that reference to the Manual is not a satisfactory substitute for an instruction and that while we assume the presence of common sense in trials before courts-martial, the proper consideration and treatment of insanity involves complexities not found in ordinary issues. Whether the court-martial interpreted the instruction correctly is a matter of conjecture as we have experienced difficulty in ascertaining the meaning which might have been conveyed. Be that as it may; when the court-martial is furnished with only one measuring rod, there is more than a fair risk that it was used, and when it is incorrect prejudice seems apparent. We, therefore, answer the first question in the affirmative.

The second part of the first certified question concerns the duty of the law officer to instruct, without request, when insanity is fairly raised. A reading of the board of review opinion causes us to conclude there is some uncertainty in the services concerning the nature and extent of the duty. We first direct attention to the fact that insanity has been set apart as something different from an affirmative defense. The Code and the Manual set up a sort of preferred treatment for this issue. It unnecessarily complicates the subject to test it by the rules ordinarily applied in criminal cases. Both the Code and the Manual lay stress on protecting one who is insane. This is borne out by the portions of the Manual previously quoted which place the burden of proving sanity on the prosecution and blending the mental responsibility of the accused in with reasonable doubt. The protective nature of the proceedings is suggested further by the provisions found in Manual paragraph 122b which are particularly apropos in this case because of the procedure used:

"If the issue of insanity is raised as an interlocutory question and the court finds the accused sane, the defense is not precluded by this finding from offering further evidence on the issue of insanity and, when all the evidence in the case has been received, the court may proceed to its findings on the guilt or innocence of the accused. In consideration of its findings upon the general issue, if the court entertains a reasonable doubt that the accused was mentally responsible for his acts, it will enter findings of not guilty as to the proper charges and specifications (120b)."

In the case of United States v. Charles F. Simmons (No. 505), 5 CMR 119, decided September 26, 1952, we laid down a rule concerning the necessity of a law officer's instructing on either an element of the offense or of a matter in defense which was so interwoven with elements that absence or presence made the difference between guilt and innocence. Insanity could be considered as covered by that rule but the Manual by express provision makes a stronger case for insanity as it requires that if it is reasonably raised, then sanity becomes an essential issue which must be established by the prosecution. This demands a specific finding by the court-martial and obviously it ought to be informed on the law. We believe that when a specific finding on a particular issue is required before the Government can establish its case, an instruction is called for with or without request by the accused. Sanity falls in this category and it was error for the law officer not to cover the subject with some instructional guidance.

II

The second question for consideration is whether the board of review should have considered the reports of the board of medical officers and the Surgeon General. The board of review was of the opinion it could not go beyond the evidence placed before the courts-martial because Article 66(c), Uniform Code of Military Justice, 50 USC § 653, implies only a review of the record of the lower forum. Article 66(c), Uni-

404

form Code of Military Justice, provides:

"In a case referred to it, the board of review shall act only with respect to the findings and sentence as approved by the convening authority. It shall affirm only such findings of guilty, and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved. In considering the record it shall have authority to weigh the evidence, judge the credibility of witnesses, and determine controverted questions of fact, recognizing that the trial court saw and heard the witnesses."

While clearly this Article suggests that every factual issue can be considered by the board, it does not suggest that evidence can be submitted to supplement that produced before the court. A trial de novo before the board of review is not contemplated, and in the ordinary case the holding of the board would be legally correct. However, as previously suggested in this opinion, insanity is given a preferred rating and there is a provision specifically controlling the procedure before the appellate tribunals.

We believe a reference to some of the Manual requirements will be helpful. Paragraph 124, Manual for Courts-Martial, United States, 1951, provides:

"After consideration of the record as a whole, if it appears to the convening authority or higher authority that a reasonable doubt exists as to the sanity of the accused, he should disapprove any findings of guilty of the charges and specifications affected by such doubt and take appropriate action with respect to the sentence. Such authority will take the action prescribed in 121 before taking action on the record whenever it appears from the record of trial or otherwise that further inquiry as to the mental condition of the accused is warranted in the interest of justice, regardless of whether any such question was raised at the trial or how it was determined if raised."

The convening authority followed the directions of the Manual, obtained a report, and attached it as part of the record. The fallacy in the reasoning of the board of review is found in the holding that it was not a higher authority as contemplated by the provisions of the Manual. We can find no good reason why the board should so restrict its authority. If it does not fall within the category, we would be forced to conclude that this Court also is not a "higher authority" and that neither the board nor this Court could independently deal with the issue. It seems quite unlikely that the drafters of the Manual would use such broad language and at the same time intend to limit the board and this Court to the bare record. To say the board should consider the report only in connection with the sentence appears an unsatisfactory and restrictive interpretation. Insanity is not a mitigating circumstance, it is a complete defense to a crime. Holloway v. United States, supra. Under the decision rendered by the board, it could be fully satisfied that the accused was insane, yet all that could be accomplished would be to reduce the sentence which had been imposed. This appears to be hostile to the wording of the Manual and the concepts of insanity as applied in present day criminal law.

Our conclusion is consistent with Rule IX F, "Uniform Rules of Procedure for Proceedings in and before Boards of Review" promulgated by The Judge Advocates General of the Armed Forces. That rule states:

"MATTERS OUTSIDE RECORD . . . Matters outside the record of trial will not be presented to or argued before a board of review except with respect to:

• • • • • •

"3. Matters affecting the sanity of the accused tending to show that further inquiry as to his mental condition is warranted in the interest of justice . . . ."

We think this rule is consistent with the Code and the Manual and good reasons support its enactment. We, therefore, find no reason to strike it down. In addition, its value should not be depreciated by limiting its application

**405**

to sentences. If the issue has been fully litigated at the trial level, there is no requirement that the board upset the holding or launch into an independent investigation. However, there is no good reason to refuse to evaluate the evidence which has been procured. In this instance the board of review should have weighed the medical reports acquired after the trial along with the other evidence found in the record. It should be needless to say, but out of a superabundance of caution we remark that this holding does not encompass any issue other than sanity.

The questions certified by The Judge Advocate General are answered in the affirmative, and the decision of the board of review is reversed.

Chief Judge QUINN and Judge BROSMAN concur.