UNITED STATES, Appellee

v

EARL R. JACKS, Colonel, U. S. Air Force, Appellant

8 USCMA 574, 25 CMR 78

*Major Marcos E. Kinevan* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ellis L. Gottlieb* and *Lieutenant Colonel Stanley S. Butt.*

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis P. Murray.*

## Opinion of the Court

ROBERT E. QUINN, Chief Judge:

The accused, a sixty-three-year-old colonel, was first convicted in June 1954 on two charges alleging indecent conduct in regard to a child under the age of sixteen years. The conviction was reversed and a rehearing was ordered by the board of review because of error in the exclusion of certain evidence proffered by the defense. Before the second trial, a number of additional charges of a different kind were laid against the accused. At the second trial, which was completed in December 1955, the accused was convicted of one of the original charges and six of the additional charges.

At neither of the accused's trials was any issue raised with respect to his mental competency to stand trial. However, he was later subjected to a psychiatric evaluation at the United States Air Force Hospital, Lackland Air Force Base. A board of medical officers reported that the accused was suffering from a "severe personality defect secondary to chronic brain disease" which "grossly impairs his ability to cooperate or participate in proceedings concerning himself." When the case reached the board of review, a further psychiatric report was obtained. A second board of medical officers examined the accused. Its diagnosis of the accused's mental condition was substantially like that of the first board. The second board also reported that, in its opinion, the accused could not, during November and December 1955, adhere to the right and could not understand the nature of the proceedings against him. On the basis of these reports and other psychiatric information, the board of review found that the accused did not possess sufficient mental capacity to understand the appellate proceedings.

Although urged by appellate defense counsel to consider the mental capacity of the accused at the time of his retrial, the board of review held that it had no power to proceed with any aspect of the case once it determines that the accused lacks the necessary mental capacity at the time of its hearing. Accordingly, the board of review entered an order staying the proceedings. Since the order can have the effect of a final disposition of the case, we granted review to consider its correctness. See United States v Papciak, 7 USCMA 224, 22 CMR 14.

When a board of review determines that the accused in a case before it for review does not possess sufficient mental capacity to understand the nature of the appellate proceedings against him, and to cooperate intelligently in his defense, it cannot proceed to a consideration of the merits, but must instead stay the review until such time as the accused possesses the requisite mental capacity. United States v Bell, 7 USCMA 744, 23 CMR 208. This rule is founded upon considerations of humanity and is intended to protect the accused in a situation where he is unable to do so himself. However, both the purpose and justice of the rule are perverted when it is turned into a barrier to prevent consideration of the accused's mental competence to stand trial. That is a question separate from, and preliminary to, the accused's guilt or innocence, and

one which, we believe, can appropriately be inquired into by the board of review.

Under the Federal criminal practice, a convicted accused is entitled to a separate post-trial hearing into his mental competency at the time of trial when "there is probable cause to believe" that he was mentally incompetent at the time of trial, and that issue was not raised and determined before or during the trial. 18 USC § 4245. In military law, "insanity is given a preferred rating." United States v Burns, 2 USCMA 400, 405, 9 CMR 30. The Manual for Courts-Martial, United States, 1951, provides that further inquiry can be made into the sanity of the accused when "warranted in the interest of justice, regardless of whether any such question was raised at the trial or how it was determined if raised." Paragraph 124. This provision certainly seems to be broader than that in the Federal practice, but even if it is not, it manifestly does not prohibit inquiry into the accused's mental capacity at the time of trial.

We have held that the Federal practice should be followed in the military unless it is contrary to, or incompatible with, military law. United States v Fisher, 4 USCMA 152, 15 CMR 152. Consequently, either under military law directly or in accordance with the Federal practice, post-conviction inquiry can be made into the mental capacity of the accused at the time of the trial.

Our conclusion here is not inconsistent with our decision in United States v Korzeniewski, 7 USCMA 314, 22 CMR 104, and in United States v Bell, 7 USCMA 744, 23 CMR 208. All that we decided in those cases was that post-trial insanity of the accused tolls the appellate consideration of the merits by the board of review. In *Korzeniewski* the Court took pains to analyze the evidence pertaining to the accused's pretrial mental condition. It pointed out that the "entire record leaves us no alternative but to conclude [as a matter of law] that the accused was sane both at the time of the commission of the offense and at the time of trial" (page 318), but that the record also clearly **576**

showed that the accused could not understand the nature of the appellate proceedings and could not cooperate in that "sphere of his defense" (page 317). On that showing, the Court held that the board of review "with its fact-finding powers" could not proceed further with the case. Similarly, in the *Bell* case the accused's pretrial sanity was established, and the only question was whether the board of review could proceed to make findings on the merits despite the accused's inability to understand and to cooperate in the appellate proceedings because of the post-trial deterioration of his mental condition. We held that the board of review could not proceed. We have a different situation in this case.

We are concerned with the accused's competency to stand trial. That is a legal question. Its nature ■ was clearly highlighted by the United States Court of Appeals for the District of Columbia Circuit in Lyles v United States, — F2d — (October 25, 1957). The court there said:

"The jury has no concern with the accused's competency to stand trial. That question is solely for the judge. . . . What we are here saying is that the competency of the accused at the time of trial to understand the charges against him and to assist in his defense is a legal question for the judge, not for the jury. . . ."

Military law has modified the above rule to the extent of subjecting the law officer's ruling on the accused's mental competency to stand trial to the approval of the court-martial, but the modification does not change the fundamental nature of the ruling. See Article 51, Uniform Code of Military Justice, 10 USC § 851. It is still interlocutory and legal, not factual. This Court also has noted that the determination of the accused's mental capacity to stand trial is an interlocutory question, which at most entitles the accused to a continuance, in the absence of withdrawal of the charges by the convening authority. United States v Lopez-Malave, 4 USCMA 341, 15 CMR 341; United States v Williams, 5 USCMA 197, 201,

17 CMR 197. See also United States v Knudson, 4 USCMA 587, 16 CMR 161, on the legal nature of a ruling on a motion for a continuance. We can best summarize the limited effect of *Korzeniewski* and *Bell* by referring back to our early decision in United States v Burns, 2 USCMA 400, 9 CMR 30. We there pointed out, as we have in this opinion, that in military law "insanity is given a preferred rating." We specifically held that a board of review could consider evidence as to the accused's mental condition, even though that evidence was obtained after the trial. Indeed, the "preferred" position given insanity is intended as a benefit to the accused. That benefit is seriously diluted if the board of review must defer for an uncertain period its consideration of the relationship between the accused's mental condition during the appeal and his mental competency at the time of trial. The lapse of time can make it exceedingly difficult—if not impossible—to obtain competent testimony on the subject. See Wright v United States, — F2d — (CA DC Cir) (October 30, 1957).

We return the record of trial to the board of review for consideration of the accused's mental capacity at the time of his trial. In so doing, we express no opinion whatever as to the accused's mental condition at the time of trial, and the board of review is entirely free to make its own finding on that issue.

Judge FERGUSON concurs.

LATIMER, Judge (dissenting):

I dissent.

This decision is a cul de sac for the Government and, to bring about that result, the majority has, in my view, once again reversed our position as to the power to proceed at an appellate level with a case while the accused is insane. In United States v Korzeniewski, 7 USCMA 314, 22 CMR 104, and United States v Bell, 7 USCMA 744, 23 CMR 208 (second appeal), we held that appellate processes must be tolled if an accused becomes insane, but now we open one side of the floodgate and say they are not tolled against an accused.

In an attempt to escape the charge that they are not reversing themselves in their application of the law, my colleagues endeavor to draw a distinction between the determination of an accused's mental competency and other questions on the merits.

I challenge the statement that accused's competency to stand trial is only a legal question. Certainly evidence must be produced and a finding made from the facts before a law officer can rule and the court-martial can challenge his ruling. In the absence of any testimony, an accused is presumed sane and, without some evidence to the contrary, there is no issue. Obviously, the question of whether an accused has the legal capacity to stand trial is interlocutory, but here the law officer was not required to rule for he was not confronted with the issue of insanity. It was not until the case reached the board of review that an interlocutory determination was necessary that accused was at that time insane. The board of review in its determination followed precisely the procedure which any fact-finding body should adopt. Before reaching the merits, a preliminary finding of insanity at that time was made, and thereupon an order was issued tolling all further proceedings. That is neither more nor less than a continuance of proceedings at that level which is all the relief the accused is entitled to at any stage of proceeding when the issue is raised. Assuming arguendo that mental capacity to stand trial may be a preliminary matter when raised for the first time on appeal, it involves the receipt and evaluation of evidence. In a hearing such as that, the accused's assistance to his counsel may be invaluable. However, as I read the above-quoted decisions setting forth the law in this area, there is no essential difference between deciding accused's mental condition and other disputed issues. Hence, I can only conclude that the rule announced by this decision is that appellate tribunals may proceed to a determination of the case of an insane accused with respect to matters in his favor, but are precluded from acting to his detriment. Al-

though I concede that such a holding is extremely beneficial to an accused, I do not believe such a rule to be proper or consistent with sound logic, good law, or our previous decisions. It is for those reasons that I dissent.

The first trial of this accused commenced on June 22, 1954, and was completed on June 30, 1954. His rehearing commenced on November 28, 1955, and was completed on December 12, 1955. In both hearings, he was represented by military defense counsel and civilian individual counsel. The issues were hotly contested on the commission of the offenses, but no evidence was adduced which indicated that the mental condition of the accused might be other than normal. Sometime after the second trial and on or about the 31st day of May 1956, assistant defense counsel fowarded certain medical reports from the United States Air Force Hospital, Lackland Air Force Base, to the Staff Judge Advocate, Kelly Air Force Base, San Antonio, Texas, the situs of the second hearing. Other reports from medical officers are found in the allied papers, and they cover a period from May 1, 1956, to October 31, 1956. In order to better place the issue in its true perspective, I have elected to quote portions of one of the reports which I believe is most favorable to the accused. It is dated June 15, 1956, and purports to be a report from a board of officers in which certain medical conclusions are set forth. It is a comprehensive document and goes far beyond the ordinary psychiatric report, for it seeks to account for some of the unusual testimony given by the accused at his trial. However, insofar as their conclusions are relevant to the issues at hand, the medical officers made the following findings:

"1. Colonel Jacks, at the time of the alleged offenses was so far free of mental defect, disease or derangement as to be able to distinguish right from wrong concerning the particular acts charged.

"2. Colonel Jacks, at the time of the alleged offenses was so far free of mental defect, disease or derangement as to be able to adhere to the right concerning the particular acts charged.

"3. Colonel Jacks, at the present time, suffers from a condition that seriously impairs his ability adequately and intelligently to participate in proceedings concerning him, particularly if such proceedings are stressful (such as a court-martial).

"4. The psychiatric condition referred to in paragraph 3, above is: (3040) Disorder, mental, nonpsychotic, with demonstrable physical etiology or associated structural change in the brain (arteriosclerotic cerebrovascular disease and premature senility), chronic, moderate, manifested by severe headaches, arteriosclerotic retinal changes, unsteadiness of gait, impairment of synergistic and finely coordinated movements, elevated cerebrospinal fluid protein (51.3mg%), impairment of memory, many signs of deterioration on standard psychological tests, shortened attention span, episodes of confusion, impairment of judgment and concentration, circumstantiality, disturbance of logical progression of thought, confabulation, instability of emotions, and generalized deterioration of the personality. Degree of impairment, marked. LOD: Yes."

In addition, the report carries the following conclusion:

"In conclusion, it is the opinion of the examiners that Colonel Jacks suffers from a severe personality defect secondary to chronic brain disease; that this defect grossly impairs his ability to cooperate or participate in proceedings concerning himself in an adequate or fully intelligent way; that this defect was already present at the time of the first trial, and even more so at the time of the second trial; that Colonel Jacks' performance as a witness may have been prejudicial to his case on the basis of the symptoms described above; and therefore that a review of the findings and disposition of his case should take cognizance of the results of these medical, psychiatric, and psychological examinations."

After accused's appeal reached a board of review for a second time and his counsel directed the board's attention to the medical reports, Government appellate counsel moved for further psychiatric observation. The motion was granted, and on November 19, 1956, a written psychiatric evaluation report was forwarded to the board of review. It is to be noted that it covers only the period of trial and is significantly silent about accused's mental responsibility for the offenses which occurred from two to four years prior to the reported period. It contained the diagnosis and findings of a board of officers, and their conclusions were as follows:

"1. Diagnosis: Chronic brain syndrome (impairment of memory, impairment of intellectual functions, impairment of judgment and a shallowness of affect) associated with chronic cardiovascular disease, hypertensive vascular disease and cerebral arteriosclerosis with behavioral reaction (fabrications and decreased sexual inhibitions). Stress: Unknown. Predisposition: Feelings of inadequacy as a male. Impairment: Mild to moderate. Profile: S-4.

"2. The accused, during November and December 1955 and at the time of our evaluation was so far free from mental defect, disease or derangement as to be able to distinguish right from wrong.

"3. The accused during November and December 1955 and at the time of our evaluation was not so far free from mental defect, disease or derangement as to be able to adhere to the right.

"4. The accused during November and December 1955 did not possess sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his defense."

On October 31, 1956, the Post Surgeon, United States Army Hospital, Fort Leavenworth, Kansas, reported on the health status of the accused. He made the following comments:

"2. Prisoner Earl L. Jacks, white male, has a history of hypertension since 1947 at which time he had his first attack of heart failure. He responded nicely to medication. As the years have passed he has had recurrent episodes of severe hypertension associated with cardiac failure. Since 1952 he has had repeated hospitalizations for hypertension and cardiac failure. Hospitalization prior to present admission was from 14 May to 14 September 1956. He was in moderately severe heart failure at that time and required constant attention and daily medications.

"3. Repeated examinations at this hospital show that he is suffering from hypertensive vascular disease, moderately severe with episodes of associated acute cardiac failure. His blood pressure has varied from a systolic between 180–230 and diastolic between 100 and 120. At the present time he is in constant suricular fibrillation."

After receipt of these latter reports, the matter came on for hearing before the board of review December 19, 1956, and, because of the contents of the reports, a finding was made that the accused did not then possess sufficient mental capacity to understand the nature of the proceedings against him and intelligently to conduct or cooperate in his own defense. Based on that finding, the board of review concluded that the case fell squarely within the rule set out in United States v Korzeniewski, 7 USCMA 314, 22 CMR 104, and entered an order tolling all further action. Counsel for the accused petitioned this Court for a review, and the critical issue now before us is whether the board of review can proceed further after having found mental incapacity then existing.

In United States v Korzeniewski, supra, Judge Ferguson, speaking for a majority Court, laid down the following rule:

". . . The present Court therefore is in agreement that a board of review, with its fact-finding powers, cannot proceed with the review of a case of an insane accused. The appellate review of such a case is tolled. If sanity is subsequently restored, re-

view at that level may then be completed."

Shortly after the board of review acted, our decision in United States v Bell, 7 USCMA 744, 23 CMR 208 (second appeal), was published and, insofar as pertinent to this case, we there stated:

"Our present consideration is whether we will affirm or retreat from the position a majority of the Court took in our previous decision. Appellant cites United States v Korzeniewski, 7 USCMA 314, 22 CMR 104, as authority for the proposition that we have overruled the principles we previously proclaimed in the former appeal, and we agree that the cited case is fully supportive of his position. Counsel for the Government advance some grounds to distinguish the two cases, but principally they press on us the argument that the rule announced in United States v Korzeniewski, supra, is bad law and should be overturned. However, all present Judges of the Court participated in the Korzeniewski case and joined in the principle that the proceedings of a board of review must halt if, and when, the accused is determined to be insane. We propose to stand on that principle."

Appellate defense counsel concede the rule to be as set forth in the above quotations, but they seek to differentiate this case on the facts. However, as I view the distinction, it is without legal difference. In this instance, boards of medical officers furnished reports from which the board of review could have made three possible findings: First, that the accused was mentally responsible for the commission of the offense; second, that he lacked the mental capacity to assist his counsel in the defense of his case in both the original trial and the rehearing; and, third, that at the time of a hearing before the present board of review, he was mentally incapable of assisting his counsel in his defense. In both United States v Bell, 6 USCMA 392, 20 CMR 108, and United States v Washington, 6 USCMA 114, 19 CMR 240, the medical reports would have permitted a board of review

to find the accused to be sane at the time of the commission of the offense and insane at the time of the hearing before the board of review. There was nothing definite about mental capacity to stand trial. However, implicit in the prevailing opinions is the thought that mental incapacity at that time was a distinct possibility, and in the former case the board was directed to make a finding on that issue. It proceeded to do so, and when the case reached us on the second hearing, we held the board could not decide that issue during the time the accused was laboring under mental incapacity. If the question could not be decided there, it cannot be decided in this instance unless we elect to retreat from our last chosen position, and accordingly I am at a loss to understand how my colleagues can refer with approval to our decision in the second appeal of *Bell*, yet state that the board of review is entirely free to make its own finding of fact with respect to sanity at the time of trial.

As is indicated in the previous excerpts, we reasoned that when post-trial insanity is established, appellate processes must be stayed and the rights of the parties cannot be adjudicated while an accused is incompetent. At the importunities of appellate defense counsel, my associates now modify the rule to permit proceedings to go forward if there is a fair risk that the accused may be benefited by the subsequent hearings. To follow that argument is to permit fact-finding bodies to proceed while an accused is insane so long as the evidence appears to favor him, but to deny them the authority to act if it seems detrimental to his cause. The trouble with such a rule is that there are two parties to a criminal prosecution and a rule should not be adopted which compels the accused to win and the Government to lose. In this particular instance, the matters of record point up the inequity which results when we apply the principle contended for. The record reflects that the accused is suffering from a weakened heart condition and a slow deterioration of the mind incident to age and mental stress and strain. It also shows that at the time the offenses were committed, he was

mentally responsible. Undoubtedly the worry connected with this lengthy prosecution, together with the ravages of age, accelerated the mental deterioration of the accused. However, at the time of trial, no one, including his battery of defense attorneys, suspected he was incapable of assisting in his own defense. The first conviction was appealed to a board of review, which ruled in his favor and reversed the conviction. He was again tried and again convicted, and still no question about his sanity was raised. Sometime thereafter, for reasons not reflected by the record, a board of medical officers assembled, examined the accused and concluded his mental faculties were impaired at the time of both trials and at both hearings before boards of review.

That medical evidence placed the last board of review in a situation where it sought to proceed in the manner we have previously directed. Now, in holding that it should have gone further and considered the other issues, the Court again reverses the position taken in United States v Bell, 7 USCMA 744, 23 CMR 208, for it must be remembered that if a board of review has the power to determine insanity at the time of the trial or at the time of the commission of the offense, it has the authority to rule for or against the accused on the issue. Such an order will result in hopeless confusion unless it is desired to free this accused, for if that fact-finding agency seeks to ascertain whether the accused was sane at the time of the commission of the offense or the time of trial, they will be faced immediately with an objection that issues of fact cannot be determined while an accused is mentally unable to give effective assistance to his counsel. That objection would be timely and, if sustained, a stalemate would result, If, on the other hand, the objection is overruled and a hearing is held, it will be a nullity for reasons set out in United States v Bell (second appeal), and United States v Korzeniewski, supra. Furthermore, all evidence presently in the record or found in the allied papers shows the accused mentally responsible at the time the offenses were committed, so it is a fair assumption that a finding

on that issue would be adverse to him. As to his mental capacity at the time of trial, there is some medical evidence that his faculties may have been impaired, but there is a fair risk that other evidence is available which would show he was mentally competent. Certainly it is not unrealistic to assume sanity when both military and civilian counsel who twice defended the accused did not suspect any mental abnormalities even though the nature of the offense would alert them to the possibility of that defense. Moreover, a fair evaluation of the medical testimony suggests a gradual deterioration of the accused's mental and physical faculties with no certainty that at the time of trial he was not mentally alert. Triers of fact are not required to accept medical reports as absolute, and both lay and other medical testimony may be available to establish sanity. I mention the foregoing matters merely to point up the fallacy of the argument that a tolling of these proceedings will inevitably work to the detriment of the accused.

In essence, what the accused seeks is a rule which will permit him to win his freedom from conviction without regard to his criminal liability for a most heinous offense. Certainly it is a fair assumption that he will be able to plead mental incapacity should the Government again seek to bring him before the bar of justice. I do not believe post-trial insanity should be a form of pardon, and I do not understand that the law should be molded without any regard for the interest of society. Particularly are the foregoing observations applicable when the only deprivation of which the accused complains is his alleged privilege to have appellate agencies act while he is mentally unsound.

Some suggestion is advanced that paragraph 124 of the Manual for Courts-Martial, United States, 1951, requires that the board of review disapprove the findings and sentence because there is a reasonable doubt about accused's sanity. I do not so interpret the paragraph. In the first place, we have held that insanity may be raised as an issue at any appellate level, and if every time it is raised the authority who is charged with the responsibility

of deciding the issue has to set aside the findings and sentence, there would be no issue. In the second place, the paragraph conditions the setting aside on a reasonable doubt as to sanity and this presupposes some form of proceedings which will permit collection and consideration of the facts. Finally, when the paragraph is interpreted as a whole, it is clear that before acting on a record, if necessary in the interests of justice, the reviewing authority is enjoined to have medical officers ascertain the mental condition of the accused. The only purpose of that proceeding would be to aid the responsible agency in arriving at a correct determination of the accused's mental condition. The board of review followed that course, and its finding that the accused was then insane is supported by the record. Having made that determination, under previous principles of law and procedure as announced by us, the board could go no further.

I would affirm the decision of the board of review.