UNITED STATES, Appellant,

v.

Eric R. MASSEY, Airman First Class,
U.S. Air Force, Appellee.

No. 60,427.

ACM S27697.

U.S. Court of Military Appeals.

Feb. 21, 1989.

For Appellant: *Major Carole W. Hanson* (argued); *Colonel Joe R. Lamport* and *Lieutenant Colonel Robert E. Giovagnoni* (on brief).

For Appellee: *Captain Paul M. Dankovich* (argued); *Colonel Richard F. O'Hair* (on brief).

*Opinion of the Court*

EVERETT, Chief Judge:

On November 30, 1987, Massey was tried by a military judge sitting alone as a special court-martial at Lowry Air Force Base, Colorado, on charges that, less than a month before, he had assaulted and been disrespectful to a noncommissioned officer and had willfully disobeyed his order—all in violation of Article 91, Uniform Code of Military Justice, 10 USC § 891—and that he had threatened the same noncommissioned officer, in violation of Article 134, UCMJ, 10 USC § 934. Contrary to his pleas, he was convicted (with exceptions as to the disrespect and threat) and sentenced to a bad-conduct discharge, confinement for 2 months, and reduction to the grade of E–1. The convening authority approved these results; and then, after the confinement had been served, Massey was placed on appellate leave.

Subsequently, Massey received medical treatment and was diagnosed as suffering from paranoid schizophrenia. A psychiatric report containing information as to his mental condition was submitted to the Court of Military Review, *see United States v. Grostefon*, 12 MJ 431 (CMA 1982). In the course of setting aside the convening authority's action, that court ordered the following relief:

> The convening authority may institute a further sanity inquiry consistent with this decision. Any additional sanity proceeding will specifically review the appellant's mental capacity as it relates to the appellate process. Should the inquiry establish that the appellant did not possess the requisite capacity at the time of trial *or cast doubt upon his mental responsibility when committing the offenses* a rehearing should be ordered.

> If a further sanity inquiry is not feasible, or if upon completion of the inquiry the convening authority is satisfied that the accused lacks, or lacked, capacity or responsibility, or for any other reason the prosecution should be terminated, the convening authority may dismiss the charges and specifications.

26 MJ 671, 674 (1988).

Thereupon, the Judge Advocate General of the Air Force certified to this Court the following issue:

> WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED BY DIRECTING THE CONVENING AUTHORITY TO INQUIRE INTO THE APPELL[EE]'S MENTAL RESPONSIBILITY FOR THE CRIMES CHARGED WHEN NO MENTAL RESPONSIBILITY DEFENSE WAS RAISED AT TRIAL.

I

A

Appellate government counsel contend that, insofar as the order of the court below directed inquiry into Massey's mental responsibility, the order exceeded that court's authority. Although conceding that such relief was permissible under *United States v. Lilly*, 25 MJ 403 (CMA 1988), appellate government counsel claim that this precedent has been superseded by an amendment adding Article 50a to the UCMJ, 10 USC § 850a, which became effective on November 14, 1986, and by issuance of the Manual for Courts–Martial, United States, 1984.

We realize that, as far as the insanity defense is concerned, Congress has changed military law to conform to the federal model under the Insanity Defense Reform Act, Pub.L.No. 98–473, Title II, § 402(a), 98 Stat.2057 (1984), codified in 18 USC § 17. Now, lack of mental responsibility is an "affirmative defense" to any offense. Pub.L.No. 99–661, Title VIII, § 802(a)(1), 100 Stat. 3816, 3905 (1986); *see* RCM 916(k), Manual, *supra*. Thus, an accused can prevail only if he convinces the factfinder that he was not mentally responsible at the time of the crime; and it does not suffice that he merely creates a reasonable doubt in the mind of the factfinder as to his mental responsibility.

Even though the burden of proof as to mental responsibility has been changed, we perceive no intent by Congress to change the principle that "[m]ilitary law accords a 'preferred rating' to questions affecting the accused's sanity. *United States v. Burns*, 2 USCMA 400, 405, 9 CMR 30, 35 (1953)." *United States v. Norton*, 22 USCMA 213, 218, 46 CMR 213, 218 (1973); *see United States v. Lilly, supra*. Indeed, the preferred treatment of insanity still is reflected in the Manual.

RCM 706(a) directs that, if a commander, an "investigating officer, trial counsel, defense counsel, military judge, or" a court member concludes

> that there is reason to believe that the accused lacked mental responsibility for any offense charged or lacks capacity to stand trial, that fact and the basis of the belief or observation shall be transmitted through appropriate channels to the officer authorized to order an inquiry into the mental condition of the accused.

In turn, RCM 706(b) provides that, before referral of charges, "an inquiry into the mental capacity or mental responsibility of the accused may be ordered by the convening authority" and, following referral, the inquiry "may be ordered by the military judge" or, "before beginning of the first session of the court-martial," by the convening authority "when the military judge is not reasonably available." Moreover, "[t]he military judge may order a mental examination of the accused regardless of any earlier examination by the convening authority."

The mental examination is "referred to a board consisting of one or more persons"; and "[e]ach member of the board shall be either a physician or a clinical psychologist." RCM 706(c)(1). The order for a mental examination

> shall require the board to make separate and distinct findings as to each of the following questions:

(A) At the time of the alleged criminal conduct, did the accused have a severe mental disease or defect? ...

(B) What is the clinical psychiatric diagnosis?

(C) Was the accused, at the time of the alleged criminal conduct and as a result of such severe mental disease or defect, unable to appreciate the nature and quality or wrongfulness of his or her conduct?

(D) Does the accused have sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in the defense?

Other appropriate questions may also be included.

RCM 706(c)(2). According to RCM 706(c)(4), "Additional examinations may be directed under this rule at any stage of the proceedings as circumstances may require."

Since RCM 706(c)(4) appears in Chapter VII of the Manual—which concerns "pretrial matters"—it might be contended that this Rule only contemplates "additional examinations ... at any stage of" the pretrial proceedings. However, this restrictive interpretation is at odds with RCM 1203(c)(5),* which concerns action by the Court of Military Review or other "appellate authority" when an "accused lacks mental capacity." There, it is provided that,

> [i]f a substantial question is raised as to the requisite mental capacity of the accused, the appellate authority may direct that the record be forwarded to an appropriate authority for an examination of the accused in accordance with R.C.M. 706, but the examination *may* be limited to determining the accused's present capacity to understand and cooperate in the appellate proceedings. The order of the appellate authority will instruct the appropriate authority as to permissible ac-

---

* This rule was not cited in the opinion of the Court of Military Review; but it already had been issued in Executive Order No. 12,586, 52 Fed.Reg. 7103, 7109 (March 3, 1987).

tions that may be taken to dispose of the matter.

(Emphasis added.)

■ This Manual provision makes it clear that a mental examination like that contemplated by RCM 706(c) may be ordered while the case is undergoing appellate review. Moreover, the Court of Military Review or other "appellate authority" may limit the mental examination "to determining the accused's present capacity to understand and cooperate in the appellate proceedings." In that event, the sanity board would not consider the accused's mental capacity at time of trial or his mental responsibility at the time of the offense. The use in the rule of the word "may," which is permissive, rather than "shall," which is mandatory, makes clear that the Manual allows the appellate authority to seek information from the sanity board about matters other than the accused's "present capacity to understand and cooperate in the appellate proceedings."

■ Even under the Government's view, the sanity board may be asked about mental capacity at time of trial; and if the accused lacked such capacity, the conviction can be set aside. If the sanity board may be allowed to look into the past in order to determine mental capacity at time of trial, it is hard to see why the Manual would prohibit an appellate authority from also asking the sanity board to look into the past and determine the accused's mental responsibility at the time of the crime. Thus, we have no hesitation in holding, contrary to the Government's protests, that the Court of Military Review was free to direct that the sanity board deal with all the questions usually answered in an inquiry under RCM 706(c).

### B

There are some practical reasons why the Court of Military Review or other "appellate authority" might choose not to limit the sanity board's inquiry to the single question of the accused's capacity to participate in the appeal. In the first place, we doubt that any significant additional effort by the sanity board will be required in answering all the usual questions under RCM 706(c)(2), instead of dealing only with present mental capacity.

Secondly, an accused who is not able to cooperate with his counsel in connection with an appeal may well have been unable to have cooperated with his defense counsel at trial; and, in that event, it would be desirable to learn as soon as possible if this is true and, if so, to set aside the findings.

Thirdly, in ascertaining an accused's mental capacity to participate in the appeal, the sanity board may discover that he has a long existing mental disease which had not been previously diagnosed but which affected his mental responsibility at the time of the offense. A possible injustice will be avoided if the "appellate authority" has allowed the sanity board to express its opinion about the accused's mental responsibility—instead of waiting to see if the accused or his defense counsel independently learns that he lacked mental responsibility and submits a petition for new trial under Article 73 of the Uniform Code, 10 USC § 873.

### C

■ We recognize that in one respect the opinion of the court below was ambiguous. It directs a rehearing if the sanity inquiry should *"cast doubt upon"* the accused's "mental responsibility when committing the offenses." However, under present law, the accused—in order to establish his affirmative defense—must do more than "cast doubt upon" his mental responsibility. Instead, he has the burden of introducing evidence to establish that he lacked responsibility. *See* Art. 50a(b). Thus, unless the results of the sanity board give reason to believe that at a rehearing the factfinder would be persuaded to accept the accused's affirmative defense, there is no occasion to order a rehearing. We assume that this is what the Court of Military Review intended, although its language was inartful.

**D**

█ The Government also claims that in some way Massey waived his claim of lack of mental responsibility by not asserting it at trial. *See* RCM 905(e). Actually, his military defense counsel initially moved before trial for appointment of a sanity board after charges had been referred; but the military judge who was handling pretrial matters but did not preside at trial denied this relief. When a civilian defense counsel was retained for the trial, he did not renew the motion before the military judge who had been designated to try the case. Admittedly, renewal of the motion would have been preferable; but we perceive no requirement that this be done. In our view, this failure to renew did not constitute any sort of waiver.

**II**

The order of the Court of Military Review was within its powers; and that court did not err by directing the convening authority to inquire into Massey's mental responsibility, even though no mental responsibility defense had been raised at trial.

The decision of the United States Air Force Court of Military Review is affirmed.

Judges COX and SULLIVAN concur.