Jamal C. THOMPSON, Cryptologic
Technician Seaman (E–3), U.S.
Navy, Petitioner,

v.

UNITED STATES, Respondent.

NMCCA 200200886.

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 7 Nov. 2001.

Decided 9 Feb. 2005.

Lt Brian Mizer, JAGC, USNR, Appellate
Defense Counsel.

LT Kathleen Helmann, JAGC, USNR, Appellate Government Counsel.

Before CARVER, Senior Judge,
WAGNER, and REDCLIFF, Appellate
Military Judges.

CARVER, Senior Judge:

The appellant petitioned this court for extraordinary relief in the nature of a writ of error *coram nobis*, requesting that we set aside our previous decision and reopen direct review of the case pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866, due to his lack of mental competency on appeal.

After review of the record of trial, our previous decision, and the pleadings, we grant the petition for extraordinary relief and set aside our previous decision. However, we deny direct review at this time. Instead, in our decretal paragraph, we order that the proceedings be stayed until such time as the appellant may competently assist in his appeal. At that time, he may submit a new brief and assignments of error.

## Background

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of two specifications of marijuana use and one specification of marijuana possession, in violation of Article 112a, UCMJ, 10 U.S.C. § 912a.

On 7 November 2001, the appellant was sentenced to a bad-conduct discharge, confinement for 45 days, and reduction to pay grade E–1. After serving his sentence to confinement, the appellant went on appellate leave in December 2001. The convening authority approved the sentence as adjudged on 27 February 2002. The record of trial was docketed with this court on 13 May 2002. The appellant's initial appellate defense counsel later stated that, despite diligent efforts, she was unable to contact the appellant. She filed her brief and assignments of error on 30 September 2002.

In her brief, the appellant's initial appellate defense counsel alleged that the bad-conduct discharge was inappropriately severe and that the court-martial order was in error. After review pursuant to Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a) and 866(c), we affirmed the findings and sentence, but directed that the supplemental court-martial order correct the error. *United States v. Thompson*, No. 200200886, unpublished op. (N.M.Ct.Crim.App. 23 Jun 2003). The supplemental court-martial order corrected the error and ordered execution of the bad-conduct discharge. Navy–Marine Corps Appellate Leave Activity Special Court–Martial Supplemental Order No. 04–0286 of 15 Mar 2004.

On 13 March 2004, the appellant's mother contacted the initial appellate defense counsel to advise her that the appellant was diagnosed with schizophrenia and had been living in an assisted living facility since his release from confinement. Thereafter a successor appellate defense counsel was assigned and he filed a petition for extraordinary relief requesting that we set aside our previous decision and order an inquiry into the appellant's mental capacity at the time of the misconduct, at the time of trial, and during the appellate process per RULE FOR COURTS-MARTIAL 706, MANUAL FOR COURTS-MARTIAL, United States (2000 ed.). The Government opposed the request, arguing that the appellant forfeited review because he did not raise the issue of mental competence at trial or on appeal.

On 6 July 2004, we ordered a R.C.M. 706 board, but did not set aside our previous decision. The Navy psychiatrist who conducted the R.C.M. 706 board interviewed the appellant, the appellant's mother, and grandmother, and talked with the appellant's new appellate defense counsel. The psychiatrist also reviewed the appellant's service and medical records. The psychiatrist reported the appellant's mental history as follows:

> **History:** CTSN Thompson appears to have been in good health until the spring of 2000 when he went home on leave and had an altercation involving his sister.... At one point, he became furious and engaged in a physical altercation with his sister.... No psychiatric intervention was done at that time, however his mother sought advice from other professionals who suggested that she call his command and urge them to get an evaluation. CTSN Thompson did get an evaluation in June 2000, but the consult report in the record states that it was for a routine mental health screening for submarine riders. No symptoms were reported, the examination was found to be unremarkable and no diagnosis was made. CTSN Thompson reports that he was sent to anger management around that time.... CTSN Thompson reports that as time went on he became more susceptible to mood fluctuations, stress and anger. The confrontation with his leading petty officer [outburst of temper and yelling] occurred in early 2001 and as the next sub deployment loomed he felt increasingly stressed

and unable to control his anger and suspiciousness. He noted that this might explain his use of marijuana at the time since he thought it might mellow him out and calm him down. However, he also clearly stated that he knew that it was wrong and he thought he might be able to escape detection.

After his court martial [sic] conviction and release from active duty in Dec 2001, he returned home to Sacramento. His episodes of conflict with his family and mood symptoms quickly escalated. He obtained a job, but became enraged when he perceived that a supervisor was treating a co-worker unjustly. He confronted the supervisor, yelled at him and was subsequently fired. He had another physical altercation with his sister and this time police were called resulting in his being brought to Sutter County Mental Health for evaluation. He was hospitalized for a week and started on Quetiapine (Seroquel). He was not particularly compliant with medication treatment or follow up and ultimately he left Sacramento for the Los Angeles area. He could not hold a job and continued to suffer from symptoms of irritability, impulsivity, paranoid delusions and hallucinations. He was hospitalized in July 2003 in Cerritos and again in January 2004 in Hawthorne. All of his hospitalizations have been for similar reasons of worsening paranoid delusions, irritability and anger with authority figures and aggressive behavior. He has been evicted from multiple Board and Care facilities because of paranoid delusions accompanied by aggressive and disruptive behavior. He has not been consistently compliant with treatment and he has been homeless for long stretches of time in the last two years.

Currently he receives treatment from the Los Angeles County Mental Health system. He is taking Quetiapine (Seroquel) and Aripiprazole (Abilify). Both are antipsychotic medications. He has been unable to hold a job, but he is attempting to go to college. He continues to have problems with appropriate public behavior and is about to be evicted from a studio apartment living situation that his grandmother set up for him.

CDR P.S. Hammer, MC, USN, staff psychiatrist, Naval Medical Center, San Diego, memo of 16 Sep 2004 at 2–3. The R.C.M. 706 board report diagnosed the appellant as suffering from schizoaffective disorder and concluded that:

At the time of the alleged criminal conduct, the appellant did have and continues to have a mental disease.

At the time of the alleged criminal conduct, the appellant was able to appreciate the nature and quality, or wrongfulness of his conduct.

At the time of the trial, the appellant possessed sufficient mental capacity to understand the nature of the proceedings and to conduct or cooperate intelligently in his defense.

Currently, the appellant is suffering from a major mental disease. At this time, he possesses sufficient mental capacity to understand the nature of the proceedings, but his symptoms are not yet controlled enough to enable him to conduct or cooperate intelligently in his appeal. He continues to have significant symptoms that impair his ability to maintain an adequate level of stability in his life. His continued episodes of paranoid delusions will make it difficult for him to make appropriate judgments regarding his appeal.

*Id.,* at 5.

On 30 September 2004, the appellant moved to dismiss the charges and specifications with prejudice in light of the R.C.M. 706 board report. Without deciding the appellant's motion to dismiss, we then ordered an additional R.C.M. 706 inquiry to consider the appellant's mental competence from the time his case was docketed with our court until the date of our first decision on his appeal. A new Navy psychiatrist interviewed the appellant on two occasions, talked with the new appellate defense counsel, and reviewed all pertinent documents. His new R.C.M. 706 board report made the following findings:

The examiner determined that it is not possible to make an opinion regarding the appellant's competency during the entire period of 13 May 2002 to 23 June 2003.

Competency is typically evaluated in the present and is based on the appellant's current state of mind. To determine the appellant's state of mind retrospectively as related to competency to conduct or cooperate intelligently in appellate proceedings during a period of greater than one-year [sic] is an impossible task. However, the examiner can render the following opinion. The evaluator opines with reasonable medical certainty that at least at one point in time between the period of 13 May 2003[sic] to 23 June 2003 the appellant was suffering from Schizoaffective disorder which rendered him unable to understand and to conduct or cooperate intelligently in his appellate proceedings.

LCDR A. Jacovich, MC, USNR, staff psychiatrist, Naval Medical Center, San Diego, ltr of 4 Dec 2004 at 2. While awaiting the results of the new R.C.M. 706 board, the appellant moved to set aside the findings and sentence and abate [continue] the proceedings until such time as the appellant was able to cooperate in his appeal. We denied the appellant's motion. Thereafter, the appellant again petitioned for relief, requesting that we set aside our original decision and reopen direct review under Article 66, UCMJ. If permitted to reopen direct review, the appellant would assign as error that he was not mentally competent at the time of his offenses, at trial, or on appeal; that he received ineffective assistance from his trial defense counsel; that the evidence was legally and factually insufficient [we note, however, that the appellant pled guilty at trial]; and that the military judge erred when he failed to order a R.C.M. 706 board *sua sponte.*

Aside from its initial opposition to the appellant's request for a R.C.M. 706 board, the Government has not filed any response to the reports of the two R.C.M. 706 boards or to the appellant's petitions for extraordinary relief.

### Extraordinary Relief Writ of *Coram Nobis*

■ We have the authority to exercise jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a). *Dettinger v. United States,* 7 M.J. 216, 219 (C.M.A.1979). One such writ is that of *coram nobis:*

*Coram nobis* is not a substitute for an appeal. It is extraordinary relief predicated upon "exceptional circumstances" not apparent to the court in its original consideration of the case. *United States v. Tavares,* [27 C.M.R. 356, 358, 1959 WL 3628 (C.M.A.1959)]. It may not be used to seek a reevaluation of the evidence or a reconsideration of alleged errors. *Lipscomb v. United States,* [273 F.2d 860, 865 (8th Cir. 1960)].

*United States v. Frischholz,* 36 C.M.R. 306, 309, 1966 WL 4467 (C.M.A.1966). Since the issue of mental responsibility was not raised on appeal, we did not resolve that issue in our prior decision. We find that the initial appellate defense counsel exercised reasonable diligence in her unsuccessful attempts to locate the appellant. We also find that the issue of mental responsibility on appeal was an "exceptional circumstance" not apparent in our initial consideration of the case. Thus, we find that the petition for a writ of *coram nobis* is not a request for reconsideration and is properly before the court.

■ The Government opposed a R.C.M. 706 board because the appellant had not raised the issue of mental responsibility at trial. However, our superior court has ruled that service courts may inquire into the appellant's mental capacity at the time of the offenses, even though no mental responsibility defense was raised at trial. *United States v. Massey,* 27 M.J. 371, 375 (C.M.A.1989); *United States v. Thomas,* 32 C.M.R. 163, 169, 1962 WL 4472 (C.M.A.1962). In *Massey,* the Court of Military Appeals suggested that "there are some practical reasons why [a service court] might choose not to limit the sanity board's inquiry to the single question of the [appellant's] capacity to participate in the appeal." 27 M.J. at 374.

### Standards of Proof

A person is presumed to be mentally competent. *See* R.C.M. 909(b), 916(k), and 1203(c)(5). The burden of proof is always upon the appellant, but the standards of proof are different at each stage in the proceedings.

The appellant bears the burden of proof to establish by clear and convincing evidence that, as a result of a severe mental disease or defect, he was, at the time of the offenses, unable to appreciate the nature and quality or the wrongfulness of his acts. Art. 50a(b), UCMJ, 10 U.S.C. § 850a(b); R.C.M. 916(k).

The appellant bears the burden of proof to establish by clear and convincing evidence that, as a result of a severe mental disease or defect, he was, at trial, unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in the defense of the case. R.C.M. 909(b). Further, the appellant bears the burden of proof to establish by a preponderance of the evidence that, as a result of a severe mental disease or defect, he was, on appeal, unable to understand the nature of the proceedings against him or to conduct or cooperate intelligently in the defense of the case. R.C.M. 1203(c)(5).

 In resolving the issue of mental competence, we are not limited to the record of trial, but may also consider documents and other material submitted outside the record. *Id.; see United States v. Murphy*, 50 M.J. 4, 6 (C.A.A.F.1998); *United States v. Van Tassel*, 38 M.J. 91, 93 (C.M.A.1993). If it is established by a preponderance of the evidence ... that the accused does not presently have the requisite mental capacity[,] ... [we] "shall stay the proceedings until the accused regains appropriate capacity, or take other appropriate action" [which may include setting aside the conviction]. R.C.M. 1203(c)(5); *see United States v. Jacks*, 25 C.M.R. 78, 79, 1958 WL 3072 (C.M.A.1958); *United States v. Bell*, 23 C.M.R. 208, 211, 1957 WL 4463 (C.M.A.1957); *United States v. Korzeniewski*, 22 C.M.R. 104, 108, 1956 WL 4745 (C.M.A.1956). Insanity tolls the proceedings at any stage in the appellate process. *Korzeniewski*, 22 C.M.R. at 107.

## Discussion

We have carefully reviewed the record of trial, including the responses made by the appellant to the military judge and the evidence he presented during sentencing; the reports of the R.C.M. 706 boards; the other documents submitted by the appellant; and the pleadings.

We find that the appellant has met his burden to show that he became mentally incompetent at some point after he was released from active duty and went home on appellate leave. We therefore find that the appellant was, prior to our initial decision, as a result of a severe mental disease, unable to conduct or to cooperate intelligently in his appeal. We also find that this infirmity continues to this day. We have not been furnished with a prognosis as to when, if ever, he will recover sufficiently to proceed with his appeal.

On the other hand, we find that the appellant has failed to meet his burden of proof to establish that he was not mentally competent at the time of the offenses or at the time of trial. Thus, we decline to set aside the findings and sentence at this time. However, since the appellant is not presently mentally competent, this issue is not foreclosed should the appellant become able to assist in his appeal.

## Conclusion

Accordingly, our previous decision of 23 June 2003 and Special Court–Martial Supplemental Order No. 04–0286 dated 15 March 2004 are set aside. The appellant's motion to dismiss the charges and specifications with prejudice is denied. The proceedings are stayed until the appellant regains the requisite mental capacity to assist in his appeal. The case is returned to the Judge Advocate General who may remand the case to a convening authority who may (1) set aside and dismiss the findings of guilty and the sentence, or (2) resubmit the case for appellate review when competent medical authority determines that the appellant is competent to assist in his appeal. After action by the convening authority, the record shall be returned to this court for further review. *Boudreaux v. United States Navy–Marine Corps Court of Military Review*, 28 M.J. 181 (C.M.A.1989).

Judge WAGNER and Judge REDCLIFF concur.