# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
WOLFE, SALUSSOLIA, and ALDYKIEWICZ
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Specialist JEREMY N. NAVARETTE**
**United States Army, Appellant**

ARMY 20160786

Headquarters Fort Drum
S. Charles Neill, Military Judge
Colonel Peter R. Hayden, Staff Judge Advocate

For Appellant:  Captain Zachary A. Gray, JA (argued); Lieutenant Colonel Tiffany M. Chapman, JA; Captain Todd W. Simpson, JA; Captain Zachary A. Gray, JA (on brief).

For Appellee:  Captain Joshua Banister, JA (argued); Lieutenant Colonel Eric K. Stafford, JA; Major Wayne H. Williams, JA; Captain Joshua Banister, JA (on brief).

17 September 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Senior Judge:

In July 2016, appellant arrived at a prearranged location to complete a sale of cocaine, for $280, to a person appellant believed was a fellow soldier.  While the person was, in fact, a fellow soldier, she was also a law enforcement agent working undercover.  Appellant was observed completing the sale.  Appellant confessed during subsequent questioning by law enforcement.[1]

---

[1] A panel of enlisted members sitting as a general court-martial convicted appellant, contrary to his plea, of one specification of wrongful distribution of cocaine in violation of Article 112a, Uniform Code of Military Justice, 10 U.S.C. § 912a (2012) [UCMJ].  The panel sentenced appellant to a bad-conduct discharge, confinement for 90 days, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved the adjudged sentence.

(continued . . .)

We discuss two issues in this appeal. First, we address appellant's motion for a Rule for Courts-Martial [R.C.M.] 706 inquiry into appellant's mental capacity and mental responsibility. We deny the motion. Second, we address appellant's assigned error that his bad-conduct discharge is too severe. It is not, and we affirm the findings and sentence.

*Background*

On 15 July 2016, military law enforcement conducted a drug suppression operation at a bar outside of Fort Drum, New York. Appellant was not a target of the investigation. However, while at the bar appellant approached SGT KS, told her that she was beautiful, and kissed her on the cheek. They later exchanged phone numbers, and appellant invited SGT KS to a local party.

Later, over text messages, appellant mentioned grabbing some liquor. Sergeant KS responded that she was looking for something more, and asked appellant if, "You [] don't happen to have anything extra besides liquor?" Using slang, appellant asked if she meant cocaine and marijuana. When SGT KS confirmed that this was what she meant, appellant told her "You met the right dude[.] How much you looking for?"

Two weeks later appellant sold SGT KS 3.5 ounces of cocaine for $280. There is no evidence that appellant used drugs. While appellant clearly had the willingness and know-how to obtain a non-trivial amount of cocaine, there was no *direct* evidence that appellant had distributed drugs on other occasions.

At trial, appellant's defense was that he was entrapped into selling drugs to SGT KS to impress a pretty girl, not because he was a drug dealer. To support that claim, appellant's mental health played a prominent role. While appellant explicitly disavowed a defense of mental responsibility, appellant did put on evidence that he was of exceptionally low intelligence and was diagnosed with PTSD (not service related).[2] This evidence was offered to show appellant's suggestibility.

---

(. . . continued)

Appellant's case is now before us for review pursuant to Article 66, UCMJ. Appellant asserts one assignment of error, which merits discussion, but not relief.[1] Appellant also personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). After due consideration, we find that appellant's *Grostefon* matters do not warrant discussion or relief.

[2] The evidence regarding appellant's intelligence was inconsistent. Appellant put on evidence that his Intelligence Quotient [IQ] was 58, or the bottom 00.3% of the population. At trial, appellant's defense counsel described his client's intelligence

(continued . . .)

On appeal, appellant submitted evidence arising after trial regarding his mental health.[3] Psychiatric records released to this court show that appellant entered a Los Angeles grade school believing he was with the Federal Bureau of Investigation [FBI], tasked with instructing children on how to respond to a terrorist attack. Under unclear circumstances, appellant then crashed his car into a school bus. Appellant was hospitalized for psychiatric care for well over a month. On 26 June 2018, appellant's diagnosis at discharge was "Bipolar disorder 1, mania, with psychosis." Appellant's discharge paperwork indicates he showed "remarkable improvement . . . with complete resolution of psychotic symptomatology. . . ." Appellant responded well to treatment and medication, his "[i]nsight and judgement were good," and his responses to questions were "appropriate and goal-directed."

Counsel on appeal have not claimed any difficulty in communicating with appellant or stated a concern about his ability to assist with the appellate process. When asked at oral argument whether there was such a concern, counsel declined to answer the question citing the attorney-client privilege.

*Motion for R.C.M. 706 Inquiry*

Appellant filed his brief with this court on 27 April 2018. On 30 July 2018, appellant moved for us to stay the appellate proceedings and order an R.C.M. 706 inquiry. The basis for the inquiry is appellant's present competence to participate in the appellate proceedings.[4] Citing *United States v. Massey*, 27 M.J. 371, 374 (C.M.A. 1989) appellant requested that if we order an inquiry into appellant's current mental status, we should similarly order an inquiry into his mental responsibility at the time of the offense.

---

(. . . continued)
as being "ten points lower than Forest Gump." Having reviewed the entire record of trial, to include appellant's Enlisted Record Brief (ERB), his graduation from several difficult military schools (to include Air Assault), and having seen appellant's ability to formulate goal directed answers to questions on both direct and cross-examination, we find that appellant was of about average intelligence. *See* Article 66(c), UCMJ (this court may make findings of fact).

[3] There was no objection to this court considering the records. We have no reason to question their authenticity. For the purposes of deciding appellant's motion for an R.C.M. 706 inquiry, we treat them as true.

[4] To the extent that this was unclear from the motion, at oral argument counsel confirmed that the primary basis for the R.C.M. 706 inquiry is appellant's competency.

Under R.C.M. 1203(c)(5), *MCM*, 2016, "in the absence of substantial evidence to the contrary, the accused is presumed to have the capacity to understand and to conduct or cooperate intelligently in the appellate proceedings." The rule continues:

> If a *substantial* question is raised as to the requisite mental capacity of the accused, the appellate authority may direct that the record be forwarded to the appropriate authority for an examination of the accused in accordance with R.C.M. 706, but the examination may be limited to determining the accused's present capacity to understand and cooperate in the appellate proceedings.

*Id*. (emphasis added).[5]

Here, while there is clear evidence that appellant has significant mental health issues, we do not find a substantial question to be raised regarding appellant's competency for three interrelated reasons.

First, the most recent information we have (appellant's discharge) is that he responded well to treatment. Nothing in appellant's discharge paperwork raises a substantial question as to appellant's competency.

Second, appellant's counsel has not asserted any actual claim that appellant "is unable to understand the nature of the proceedings . . . or cooperate intelligently in the defense of the case." R.C.M. 909(a), *MCM*, 2016. At oral argument, appellant's counsel stated he had communicated with his client, but declined to say whether the communication had revealed any competency concerns. While we respect counsel's declination to answer our question at oral argument, counsel did state that he was in communication with his client. At least under these circumstances, we see no need to test appellant's claim that answering our question would violate the attorney-client privilege, but in the absence of the answer we fall back to the presumption that appellant is competent.

---

[5] As it was not briefed, we assume, without deciding, that the President has the authority to prescribe a substantive rule of appellate procedure. *But see* Article 36, UCMJ (authorizing the president to prescribe rules for pretrial, trial, and post-trial procedures); *and* Article 66(f), UCMJ ("The Judge Advocates General prescribe procedural rules for the Courts of Criminal Appeals . . . .").

4

Last, and of least importance, appellant submitted a brief to this court. We trust and presume counsel submitted the brief within professional norms.[6]

*Severity of the Sentence*

Appellant asserts that a sentence that includes a bad-conduct discharge is too severe. Limiting ourselves to the evidence admitted at trial, as well as appellant's post-trial submission, we disagree.[7]

While this Court has broad powers under Article 66(c), we may not act in equity, nor may we grant clemency. *United States v. Nerad*, 69 M.J. 138 (C.A.A.F. 2010). To be sure, the line that separates the permissible "a carte blanche to do justice"[8] and the impermissible (granting clemency) may be blurry to the point of

---

[6] We note that appellant submitted matters pursuant to *Grostefon*, 12 M.J. 431, as part of the appendix to his brief. He raised two issues asserting that he was entrapped and the evidence was factually insufficient to support his conviction due to law enforcement's "rampant misconduct." Although these matters do not warrant relief, they also do not indicate appellant is unable to competently assist in his appeal. Additionally, we note appellant has not moved to withdraw either the brief or the appendix.

[7] This is explained by our superior court's decision in *United States v. Healy*, 26 M.J. 394, 396-97 (C.M.A. 1988).

> [I]nformation submitted to the convening authority for clemency purposes will in some instances be part of the "record" which is considered by the Court of Military Review in determining sentence appropriateness.
> . . . .
> Although the Code provides a means after trial for an accused to get clemency-oriented information into the "record" prior to action by the convening authority and thereby can bring this information to the attention of the Court of Military Review, the Code does not provide an opportunity for the accused and his counsel to supplement the "record" after the convening authority has acted. We infer from this omission that Congress never intended that a Court of Military Review would be under any duty to receive additional information on sentencing after the convening authority had acted.

[8] *United States v. Claxton*, 32 M.J. 159, 162 (C.A.A.F. 1991).

being indistinguishable. A cynic could critique our work as amounting to a difference in word choice ("reasonable" and "just" vice "fair" and "equitable") rather than a difference in reasoning or result. To avoid the criticism that we are taking measure by our own feet,[9] we exercise judicial discretion and restraint. Our restraint is guided by the UCMJ, which requires our review under Article 66(c) to recognize that the trial court saw and heard the witnesses.

Here, appellant's offense did not constitute minor misconduct and the case was properly before a general court-martial. Evidence regarding appellant's mental health was properly before the court-martial and was included in the determination of appellant's sentence. While appellant's misconduct is mitigated by the evidence introduced regarding his mental health, that mitigation is already reflected in what would otherwise be an unusually light sentence.

Recognizing that the court-martial saw and heard the witnesses and evidence, we find appellant's sentence to be correct in law, correct in fact, and it should be approved.

## CONCLUSION

On consideration of the entire record, and the assigned errors, to include those matters personally raised by appellant pursuant to *Grostefon*, 12 M.J. 431, we hold the finding of guilty and the sentence as approved by the convening authority are correct in law and fact. Accordingly, the finding of guilty and the sentence are AFFIRMED.

Judge SALUSSOLIA and Judge ALDYKIEWICZ concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[9] *See Nerad*, 69 M.J. at 155 (Stucky, J., dissenting).